Carl Post, OSB No. 061058
carlpost@civilrightsoregon.com
John Burgess, OSB No. 106498
johnburgess@civilrightsoregon.com
SNYDER, POST & BURGESS
1000 SW Broadway, Suite 2400
Portland, OR 97205
Telephone: (971) 442-9303
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

TAMARA FULMER,

Plaintiff,

v.

COLUMBIA COUNTY, BRIAN PIXLEY, MARILYN CADE, RN, NANCY RONAN, DNP, SARA FOTO, MHP, and JOHN/JANE DOES 1-5,

Defendants.

Case No. 3:25-cv-00105-YY

**SECOND AMENDED COMPLAINT**

**INTRODUCTION**

1. This civil rights and state-law tort action arises from Defendants' forced vaginal and rectal examination of Plaintiff Tamara Fulmer while she was in custody at the Columbia County Jail. Without a warrant, court order, emergency, medical necessity, reasonable justification, or voluntary and informed consent, Defendants caused Ms. Fulmer to be subjected to an invasive, penetrating search of her vagina and rectum using medical instruments. During

the same nonconsensual "examination," Ms. Fulmer's IUD was removed without valid consent, causing immediate and severe pain, cramping, bleeding, and distress.

2. Plaintiff brings claims under 42 U.S.C. § 1983 for violation of her rights under the Fourth Amendment, the Eighth Amendment, and, in the alternative, the Fourteenth Amendment. Plaintiff also brings state-law claims for medical negligence, battery, intentional infliction of emotional distress, and negligence. Plaintiff seeks compensatory damages, punitive damages against the individual Defendants where permitted by law, attorney fees and costs under 42 U.S.C. § 1988, pre- and post-judgment interest, and all other relief the Court deems just and proper.

**JURISDICTION AND VENUE**

3. This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

4. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same facts and circumstances as Plaintiff's federal claims and form part of the same case or controversy.

5. Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in Columbia County, Oregon, and because Defendants reside in, are located in, conduct business in, or are subject to personal jurisdiction in this District.

6. Plaintiff timely provided notice of her state-law tort claims as required by the Oregon Tort Claims Act.

**PARTIES**

7. Plaintiff Tamara Fulmer is an individual resident of the State of Oregon.

8. Defendant County is a county and local governmental entity organized under the laws of the State of Oregon. Columbia County operates the Jail and is responsible for the policies, customs, practices, training, supervision, and conduct of its employees and agents within the jail. Wellpath, LLC contracted with Columbia County to provide medical and mental-health services to people in custody at the Jail. At all relevant times, Wellpath employees acted under color of state law by providing medical and mental health care to incarcerated people pursuant to that contract.

9. Defendant Brian Pixley was, at all relevant times, the Sheriff of Columbia County and a final policymaker for Columbia County with respect to jail operations, custody practices, searches, use of force, conditions of confinement, and the supervision and training of jail staff. Plaintiff sues Defendant Pixley in his individual capacity.

10. Defendant Marilyn Cade, R.N., was, at all relevant times, a nurse providing medical services at the Jail. Plaintiff sues Defendant Cade in her individual capacity. At all relevant times, Defendant Cade acted under color of state law and within the course and scope of her employment or agency relationship with Wellpath.

11. Defendant Nancy Ronan, D.N.P., was, at all relevant times, a medical provider providing medical services at the Jail. Plaintiff sues Defendant Ronan in her individual capacity. At all relevant times, Defendant Ronan acted under color of state law and within the course and scope of her employment or agency relationship with Wellpath.

12. Defendant Sara Foto, M.H.P., was, at all relevant times, a mental-health provider involved in the care and treatment of people in custody at the Jail, including Plaintiff. Plaintiff

sues Defendant Foto in her individual capacity. At all relevant times, Defendant Foto acted under color of state law and within the course and scope of her employment or agency relationship with Wellpath, Columbia County, Columbia Community Mental Health, or another entity responsible for providing mental-health services at the Jail.

13. Defendants John/Jane Does 1-5 ("Doe Defendants") are individuals whose identities are presently unknown and who participated in, authorized, supervised, failed to intervene in, ratified, or otherwise caused the constitutional and state-law violations alleged in this Complaint. Plaintiff will amend this Complaint to substitute the true names of these defendants when they are discovered.

14. At all relevant times, each individual Defendant acted under color of state law. At all relevant times, each individual Defendant also acted within the course and scope of their employment or agency relationship with Columbia County or Wellpath.

15. At all relevant times, Defendants acted individually and in concert with one another to cause the harms alleged in this Complaint.

## FACTUAL ALLEGATIONS

16. On or about January 3, 2023, Plaintiff Tamara Fulmer entered the Jail to serve a 90-day sentence for driving while revoked. At that time, Ms. Fulmer suffered from serious medical conditions, including fibromyalgia and Raynaud's disease. These conditions caused chronic pain and made her particularly vulnerable to cold temperatures, which could cause loss of circulation in her limbs and severe pain.

17. Before reporting to jail, Ms. Fulmer believed that the jail would not permit her to bring outside medications into the facility. She was also concerned that, once in custody, she would have difficulty obtaining medications that had been prescribed to her by outside medical

providers. Fearing that she would be denied necessary medication while incarcerated, Ms. Fulmer secreted prescribed medication inside her body before reporting to the jail.

18. On or about January 8, 2023, jail staff discovered the medication. Ms. Fulmer admitted that she had brought the medication into the jail, and she was charged with introducing contraband into a correctional facility. After the medication was discovered and removed, Ms. Fulmer did not have any additional medication or contraband hidden inside her body.

19. Approximately a week and a half later, Ms. Fulmer developed hives that she believed were caused by an allergic reaction to the soap used to wash jail clothing and bedding. She requested Benadryl and asked for medical assistance. Instead of promptly addressing her medical concern, jail staff removed her from her cell, placed her in a booking cell, and required her to provide a urine sample.

20. The urine analysis was positive for the medication Ms. Fulmer had previously brought into the jail and had been taking. Ms. Fulmer repeatedly explained to jail, medical, and mental-health staff that the medication would remain detectable in her urine for approximately thirty days and that a positive instant urine test did not mean she still had medication hidden inside her body. She also explained that confirmatory testing would show that the levels were dropping. Defendants knew or should have known that because she took the medication she would test positive for the medication for a period of time after discontinuing the medication. Defendants disregarded this fact and continued to insist that she had additional contraband concealed inside her body, despite the fact that they had already removed the medications from her person more than a week before.

21. Defendants then placed Ms. Fulmer in a dry cell. The dry cell had no toilet and no sink. Ms. Fulmer was required to urinate and defecate into a bucket while under surveillance.

The cell was filthy, cold, and unsanitary; it reeked of feces and urine. Ms. Fulmer was surrounded by inmates screaming and banging on things, and she experienced escalating panic, anxiety, humiliation, and distress.

22. When Ms. Fulmer was moved into the dry cell, she told staff that she was suicidal. In response, staff stripped her down to a suicide smock and removed her clothing and regular bedding. Although Ms. Fulmer explained that she had Raynaud's disease and would suffer severe pain and loss of circulation if she became cold, she was denied adequate clothing and bedding for days. She had previously been approved for extra blankets because of her medical needs, but those accommodations were not provided in the dry cell, and the cell was kept cold.

23. Ms. Fulmer remained in the dry cell for approximately a week. During that time, staff monitored her urine and feces for contraband but found no contraband. A positive urine test reflected medication already taken and did not establish that she still had medication hidden inside her body. Defendants nevertheless continued to treat her as though she was concealing contraband without evidence.

24. Defendant Foto was involved in Ms. Fulmer's mental health care during this period. Despite the fact that the medication would obviously remain detectable in her urine and despite the absence of any contraband discovered during dry-cell monitoring, Defendant Foto continued to insist that Ms. Fulmer still had contraband concealed inside her body. Defendant Foto's conduct contributed to the continuation of the coercive conditions that led to the invasive search.

25. After approximately a week in the dry cell, Ms. Fulmer was humiliated, mentally and physically exhausted, and desperate to be released from those conditions. From Defendants'

words, conduct, and the circumstances of her confinement, Ms. Fulmer understood that she would not be released from the dry cell unless she underwent a gynecological examination described as a Pap smear.

26. When Ms. Fulmer was removed from the dry cell, she was told that she was being taken for a Pap smear. She was not told that she would be subjected to a contraband body-cavity search. She was not told that her anus would be searched against her will with instruments. She was not told that her IUD would be removed. She was not given a meaningful explanation of what would occur or any meaningful opportunity to refuse.

27. Ms. Fulmer was taken to the medical unit, where Defendant Ronan performed an invasive examination in the presence of Defendant Cade, and a deputy. Defendant Ronan began with a vaginal examination. The examination was not supported by a warrant, court order, medical emergency, legitimate medical necessity, or voluntary and informed consent.

28. During the vaginal examination, Defendant Ronan observed that Ms. Fulmer had an IUD. Defendant Ronan manipulated or pulled on the IUD in a way that caused significant pain. Ms. Fulmer told Defendant Ronan to stop pulling on it or remove it because it hurt badly every time it was touched. Defendant Ronan then removed the IUD without obtaining separate, voluntary, and informed consent and without explaining the risks, benefits, alternatives, or medical necessity of the removal.

29. The IUD removal caused immediate and severe cramping, pain, bleeding, and distress. Defendant Cade was present during the procedure and knew or reasonably should have known that Ms. Fulmer had not been given a meaningful explanation of the procedure, had not provided valid consent, and was experiencing pain and distress. Defendant Cade nevertheless

assisted in, facilitated, permitted, or failed to intervene to stop the unlawful medical mistreatment.

30. After the vaginal examination confirmed that Ms. Fulmer had no contraband in her vagina, Defendant Ronan proceeded to conduct an anal cavity search. Ms. Fulmer had not been told in advance that an anal cavity search would occur and had not consented to such a search.

31. Defendant Ronan used vaginal clamps, forceps, and other instruments during the anal cavity search. She inserted the clamps into Ms. Fulmer's anal cavity, removed and reinserted them when they would not lock, then locked them open and used forceps and other instruments while instructing Ms. Fulmer to push. The search was painful, humiliating, degrading, and medically unnecessary.

32. Defendant Cade was present during the anal cavity search and knew or reasonably should have known that the search exceeded the scope of any purported Pap smear, that Ms. Fulmer had not been advised that an anal cavity search would occur, and that the search was causing severe pain, humiliation, and distress. Defendant Cade nevertheless assisted in, facilitated, permitted, or failed to intervene to stop the search.

33. The anal cavity search confirmed what Ms. Fulmer had already told Defendants: she had no medication or contraband concealed inside her body. The search was not justified by any warrant, court order, emergency, medical necessity, or legitimate penological need. It was grossly disproportionate to any asserted security concern, particularly because Defendants had already confined Ms. Fulmer in a dry cell for approximately a week and had found no contraband.

34. At no time did Defendants have clinical evidence, or articulate any medical basis, to believe that Ms. Fulmer had swallowed, inserted, or concealed drug packets that had ruptured or were likely to rupture and create a risk of overdose. Ms. Fulmer did not display symptoms of overdose, acute toxicity, or any other medical emergency requiring an immediate invasive vaginal or rectal procedure. The asserted basis for Defendants' conduct was suspicion of concealed contraband, not emergency medical treatment necessary to prevent overdose or serious medical harm.

35. Defendants had already searched Ms. Fulmer and removed the medication that she brought into the facility. That prior search and recovery confirmed that the known medication had already been located and removed. In the absence of new evidence that additional contraband existed, Defendants had no reasonable basis to escalate from dry-cell monitoring to a forced vaginal and rectal search with instruments.

36. After the search, Ms. Fulmer asked for a shower and clean clothing because she had not showered or changed clothing in over a week. A deputy responded that she "felt bad for her flashlight," referring to the flashlight used during the cavity search, and told Ms. Fulmer that she was being returned to the dry cell until staff figured out what to do with her.

37. Ms. Fulmer's pain worsened after the search. She experienced anal bleeding, vaginal bleeding or discharge, cramping, difficulty sitting, difficulty using the toilet, humiliation, anxiety, and emotional distress. She requested outside medical attention so her injuries could be evaluated and documented, but Defendants did not promptly send her for outside care.

38. Instead, Defendants told Ms. Fulmer to submit a kite to medical, even though the same medical staff had just caused her injuries. Defendants also failed to promptly provide

adequate aftercare, a shower, clean clothing, or appropriate treatment for her pain and bleeding. Ms. Fulmer remained in restrictive or booking-cell conditions for approximately two more days.

39. Defendants' conduct was punitive, coercive, and grossly disproportionate to any legitimate correctional or medical purpose. Defendants used Ms. Fulmer's prolonged dry-cell confinement and medical vulnerability to coerce her into a purported medical procedure that became an invasive contraband search. The search and IUD removal were unreasonable, excessive, medically improper, and performed without valid consent.

40. At all relevant times, Columbia County operated the Jail and was responsible for the policies, customs, practices, training, supervision, and discipline of jail staff. Columbia County was also responsible for ensuring that medical and mental-health services in the jail were provided in a manner consistent with constitutional requirements.

41. Columbia County knew or should have known that suspected internal contraband must be addressed through constitutionally adequate procedures and that anal and vaginal body-cavity searches are highly invasive procedures requiring strict safeguards. Columbia County also knew or should have known that dry-cell confinement can cause serious physical and psychological harm and must be used only when justified, appropriately limited, sanitary, and accompanied by adequate medical and mental-health care.

42. Columbia County failed to adopt, implement, enforce, or train staff on adequate policies governing suspected internal contraband, dry-cell confinement, invasive body-cavity searches, use of medical staff for correctional searches, accommodations for medically vulnerable inmates, responses to suicidal inmates, and post-search medical care.

43. Columbia County's policies, customs, practices, failures to train, failures to supervise, and failures to discipline or correct unconstitutional conduct were moving forces behind the violations of Ms. Fulmer's rights.

44. Defendant Pixley, as Sheriff of Columbia County, was responsible for the operation of the Jail and for the policies, customs, training, supervision, and discipline of jail staff. Defendant Pixley knew or reasonably should have known that jail staff required adequate policies and training regarding dry-cell confinement, invasive searches, medical care, mental-health care, and the treatment of medically vulnerable and suicidal inmates.

45. Upon information and belief, Columbia County and its policymakers became aware of the incident involving Ms. Fulmer after it occurred but failed to meaningfully investigate, discipline, retrain, or correct the conduct of the staff involved. Their failure to take corrective action ratified the unconstitutional conduct and demonstrated deliberate indifference to the rights of people in custody.

46. As a direct and proximate result of Defendants' conduct, Ms. Fulmer suffered physical injuries, pain, bleeding, cramping, humiliation, emotional distress, trauma, anxiety, fear, and economic damages, including medical and counseling expenses and other losses to be proven at trial.

**FIRST CLAIM FOR RELIEF**

**42 U.S.C. § 1983 – Fourth Amendment**

**(Against Defendants Ronan, Cade, and John/Jane Does)**

47. Plaintiff realleges and incorporates all prior paragraphs as though fully set forth herein.

48. At all relevant times, Defendants Ronan, Cade, and The Doe Defendants acted under color of state law.

49. Plaintiff had a clearly established constitutional right under the Fourth Amendment to be free from unreasonable searches of her body, including unreasonable strip searches, vaginal searches, anal cavity searches, and other invasive bodily intrusions.

50. The vaginal and anal search of Plaintiff was highly invasive, humiliating, painful, and traumatic.

51. The search was not supported by a warrant, court order, medical emergency, medical necessity, valid consent, or a legitimate and reasonable penological justification sufficient to justify the manner and scope of the intrusion.

52. By the time the search occurred, Defendants had confined Plaintiff in a dry cell for approximately a week, monitored her urine and feces, and found no contraband.

53. Her positive urine tests reflected medication she had already taken and did not mean that she still had medication concealed inside her body.

54. Despite that information, Defendant Ronan conducted an invasive vaginal examination, manipulated and removed Plaintiff's IUD without voluntary and informed consent, and then conducted an anal cavity search using vaginal clamps, forceps, and other instruments.

55. The anal cavity search exceeded the scope of any purported Pap smear or medical examination, was not explained to Plaintiff in advance, and was performed without voluntary and informed consent.

56. Defendant Cade was present for and participated in the examination and search.

57. Defendant Cade knew or reasonably should have known that Plaintiff had not been advised that she would be subjected to an anal cavity search, had not provided valid consent, and was experiencing pain, humiliation, and distress.

58. Defendant Cade nevertheless assisted in, facilitated, permitted, or failed to intervene to stop the unlawful search and bodily intrusion.

59. The Doe Defendants participated in, authorized, facilitated, supervised, or failed to intervene in the unlawful search and bodily intrusion, including by transporting Plaintiff to the medical unit, remaining present during the search, assisting with the search, or requiring Plaintiff to return to restrictive housing afterward despite her pain and requests for care.

60. The scope, manner, place, and justification for the search were unreasonable under the Fourth Amendment.

61. Defendants' conduct was intentional, knowing, reckless, or deliberately indifferent to Plaintiff's constitutional rights.

62. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical pain, vaginal and anal bleeding, cramping, humiliation, emotional distress, trauma, anxiety, fear, and other damages to be proven at trial.

63. Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, attorney fees and costs under 42 U.S.C. § 1988, and all other relief the Court deems just and proper.

**SECOND CLAIM FOR RELIEF**

**42 U.S.C. § 1983 – Eighth Amendment**

**(Against Defendants Ronan, Cade, Foto, and John/Jane Does)**

64. Plaintiff realleges and incorporates all prior paragraphs as though fully set forth herein.

65. At all relevant times, Plaintiff was serving a sentence at the Jail and was entitled to the protections of the Eighth Amendment.

66. Plaintiff had a clearly established right to be free from cruel and unusual punishment, including the unnecessary and wanton infliction of pain, excessive force, deliberate indifference to serious medical and mental-health needs, and unconstitutional conditions of confinement.

67. Plaintiff had serious medical needs, including fibromyalgia, Raynaud's disease, pain, risk of circulation loss from cold exposure, anxiety, panic, suicidal ideation, and later anal and vaginal pain, bleeding, and cramping caused by the invasive search and IUD removal.

68. Defendants knew, or reasonably should have known, that Plaintiff had serious medical and mental-health needs requiring appropriate care, accommodation, and protection from unnecessary physical and psychological harm.

69. Defendants nevertheless subjected Plaintiff to prolonged dry-cell confinement under unsanitary, cold, humiliating, and psychologically destabilizing conditions, despite her medical vulnerabilities and stated suicidal ideation.

70. Defendants denied Plaintiff adequate clothing, bedding, sanitation, medical care, and mental-health care while she was confined in the dry cell.

71. Defendant Foto participated in, encouraged, approved, or failed to intervene in the continued belief that Plaintiff still had contraband concealed inside her body, despite the fact that the medication would remain detectable in her urine for approximately thirty days and despite the absence of any contraband discovered during dry-cell monitoring.

72. Defendant Foto's conduct contributed to the coercive and punitive circumstances that led to Plaintiff being taken from the dry cell for a purported Pap smear and invasive body-cavity search.

73. Defendant Ronan subjected Plaintiff to a painful and invasive vaginal and anal search, removed Plaintiff's IUD without voluntary and informed consent, and used instruments to search Plaintiff's anal cavity despite the absence of a warrant, court order, medical necessity, emergency, or legitimate need for such a procedure.

74. Defendant Cade was present for and participated in the examination and search, knew or reasonably should have known that the procedure was causing Plaintiff severe pain, humiliation, and distress, and nevertheless assisted in, facilitated, permitted, or failed to intervene to stop the unlawful conduct.

75. The Doe Defendants participated in, authorized, facilitated, supervised, or failed to intervene in the unconstitutional conditions, coercive search process, invasive search, denial of care, or post-search confinement and medical neglect.

76. After the search, Defendants failed to provide adequate medical care despite Plaintiff's worsening pain, anal bleeding, vaginal bleeding or discharge, cramping, difficulty sitting, difficulty using the toilet, and requests for outside medical attention.

77. Defendants' conduct was not undertaken in a good-faith effort to maintain discipline, security, or institutional order. Rather, Defendants' conduct was punitive, coercive,

medically unjustified, grossly disproportionate to any legitimate need, and reflected deliberate indifference to Plaintiff's health, safety, dignity, and constitutional rights.

78. Defendants' conduct constituted cruel and unusual punishment in violation of the Eighth Amendment.

79. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical pain, bleeding, cramping, humiliation, emotional distress, trauma, anxiety, fear, and other damages to be proven at trial.

80. Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, attorney fees and costs under 42 U.S.C. § 1988, and all other relief the Court deems just and proper.

**THIRD CLAIM FOR RELIEF**

**42 U.S.C. § 1983 – Fourteenth Amendment**

**(Against Defendants Ronan, Cade, Foto, and John/Jane Does)**

81. Plaintiff realleges and incorporates all prior paragraphs as though fully set forth herein.

82. Plaintiff alleges this claim in the alternative to her Eighth Amendment claim to the extent that Plaintiff was a pretrial detainee for any relevant purpose because she was facing new charges at the time of the events alleged.

83. At all relevant times, Plaintiff had a clearly established right under the Fourteenth Amendment to be free from objectively unreasonable force, objectively unreasonable conditions of confinement, and deliberate indifference to serious medical and mental-health needs.

84. Plaintiff had serious medical and mental-health needs, including fibromyalgia, Raynaud's disease, pain, risk of circulation loss from cold exposure, anxiety, panic, suicidal

ideation, and later anal and vaginal pain, bleeding, cramping, and emotional trauma caused by the invasive search and IUD removal.

85. Defendants knew, or reasonably should have known, that Plaintiff's medical conditions, suicidal statements, dry-cell confinement, lack of adequate clothing and bedding, and need for medical care presented a substantial risk of serious harm.

86. Defendants nevertheless placed and kept Plaintiff in coercive, unsanitary, cold, and psychologically harmful dry-cell conditions for approximately a week, denied her adequate clothing, bedding, sanitation, medical care, and mental-health care, and continued to treat her as though she had contraband concealed inside her body despite her repeated explanations and the absence of any contraband found during monitoring.

87. Defendant Foto participated in, encouraged, approved, or failed to intervene in the continued assertion that Plaintiff had contraband concealed inside her body, despite Plaintiff's repeated explanation that the positive urine tests reflected medication already taken and despite the absence of any contraband discovered during dry-cell monitoring.

88. Defendant Foto's conduct contributed to the coercive circumstances that led to Plaintiff being taken from the dry cell for a purported Pap smear and invasive body-cavity search.

89. Defendant Ronan subjected Plaintiff to an invasive vaginal examination, removed Plaintiff's IUD without voluntary and informed consent, and conducted an anal cavity search using vaginal clamps, forceps, and other instruments without a warrant, court order, medical emergency, medical necessity, valid consent, or reasonable penological justification.

90. Defendant Cade was present for and participated in the examination and search, knew or reasonably should have known that the procedure was causing Plaintiff severe pain,

humiliation, and distress, and nevertheless assisted in, facilitated, permitted, or failed to intervene to stop the unlawful conduct.

91. The Doe Defendants participated in, authorized, facilitated, supervised, or failed to intervene in the unconstitutional conditions, coercive search process, invasive search, denial of care, or post-search confinement and medical neglect.

92. After the search, Defendants failed to provide adequate medical care despite Plaintiff's worsening pain, anal bleeding, vaginal bleeding or discharge, cramping, difficulty sitting, difficulty using the toilet, and requests for outside medical attention.

93. Defendants' conduct was objectively unreasonable, punitive, medically unjustified, and grossly disproportionate to any legitimate governmental objective.

94. Defendants' conduct violated Plaintiff's rights under the Fourteenth Amendment.

95. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical pain, bleeding, cramping, humiliation, emotional distress, trauma, anxiety, fear, and other damages to be proven at trial.

96. Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, attorney fees and costs under 42 U.S.C. § 1988, and all other relief the Court deems just and proper.

## FOURTH CLAIM FOR RELIEF

## 42 U.S.C. § 1983 – Municipal Liability

## (Against Defendant County)

97. Plaintiff realleges and incorporates all prior paragraphs as though fully set forth herein.

98. At all relevant times, Defendant County operated the Jail and was responsible for the policies, customs, practices, training, supervision, and discipline of jail staff and for ensuring that medical and mental-health services in the jail were provided in a constitutionally adequate manner.

99. At all relevant times, Columbia County acted under color of state law.

100. Columbia County had a duty to ensure that people in its custody were not subjected to unreasonable searches, excessive force, cruel and unusual punishment, unconstitutional conditions of confinement, or deliberate indifference to serious medical and mental-health needs.

101. Columbia County knew or should have known that suspected internal contraband presents serious constitutional and medical concerns and that any response to such suspicion must comply with constitutional limits governing dry-cell confinement, bodily searches, medical decision-making, and use of force.

102. Columbia County knew or should have known that vaginal and anal body-cavity searches are highly invasive, traumatic, and constitutionally sensitive procedures that require meaningful safeguards, including lawful authorization, medical justification where applicable, reasonable scope and manner, and valid consent where medical procedures are involved.

103. Columbia County failed to adopt, implement, enforce, or train staff on adequate policies governing suspected internal contraband, dry-cell confinement, invasive body-cavity searches, use of medical staff to perform or assist with correctional searches, consent to medical procedures, accommodations for medically vulnerable inmates, response to suicidal inmates, and post-search medical care.

104. Columbia County maintained policies, customs, or practices under which people suspected of internal contraband could be placed in prolonged dry-cell confinement and then subjected to invasive medical or body-cavity searches without adequate constitutional, medical, or supervisory safeguards.

105. Columbia County maintained policies, customs, or practices under which jail staff and medical or mental-health staff relied on instant urine tests, without adequate confirmatory testing or medical interpretation, to conclude that a person continued to conceal contraband inside the body.

106. Columbia County maintained policies, customs, or practices under which medically vulnerable and suicidal inmates could be placed in cold, unsanitary, and psychologically harmful dry-cell conditions without adequate clothing, bedding, sanitation, medical accommodations, or mental-health care.

107. Columbia County failed to adequately train and supervise jail staff regarding the constitutional limits on dry-cell confinement, invasive body searches, use of medical staff for correctional purposes, provision of medical accommodations, and the duty to obtain appropriate medical care when a person in custody reports pain, bleeding, or other injuries following an invasive procedure.

108. Columbia County also failed to adequately train and supervise staff regarding the need to distinguish legitimate medical care from correctional searches and to ensure that medical procedures are not used as a coercive tool to obtain evidence or punish a person in custody.

109. Columbia County's failures were not isolated or accidental. They reflected deliberate indifference to the obvious risk that people in custody, including Plaintiff, would be

subjected to unreasonable searches, excessive force, punitive conditions, medical mistreatment, and denial of care.

110. Defendant Pixley, as Sheriff of Columbia County, was a final policymaker for the County with respect to jail operations, custody practices, searches, conditions of confinement, training, supervision, and discipline of jail staff.

111. Defendant Pixley knew or reasonably should have known that the County was required to maintain constitutionally adequate policies and training regarding dry-cell confinement, invasive searches, medical and mental-health care, and treatment of medically vulnerable and suicidal inmates.

112. Upon information and belief, Columbia County and its policymakers became aware of the incident involving Plaintiff after it occurred but failed to meaningfully investigate, discipline, retrain, or correct the conduct of the staff involved.

113. Upon information and belief, Columbia County and its policymakers failed to repudiate the unlawful search, the coercive dry-cell conditions, the denial of medical accommodations, and the failure to provide adequate care after Plaintiff reported pain and bleeding.

114. Columbia County's failure to meaningfully investigate, discipline, retrain, or correct the conduct of the involved staff ratified the unconstitutional conduct and demonstrated deliberate indifference to the rights of people in custody.

115. Columbia County's policies, customs, practices, failures to train, failures to supervise, and ratification were moving forces behind the violations of Plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments.

116. As a direct and proximate result of Columbia County's conduct, Plaintiff suffered physical pain, bleeding, cramping, humiliation, emotional distress, trauma, anxiety, fear, and other damages to be proven at trial.

117. Plaintiff is entitled to compensatory damages, attorney fees and costs under 42 U.S.C. § 1988, and all other relief the Court deems just and proper.

**FIFTH CLAIM FOR RELIEF**

**State Law – Medical Negligence**

**(Against All Defendants)**

118. Plaintiff realleges and incorporates all prior paragraphs as though fully set forth herein.

119. At all relevant times, Defendants Ronan, Cade, Foto, Doe medical or mental-health providers owed Plaintiff a duty to exercise the degree of care, skill, and diligence ordinarily used by reasonably careful medical and mental-health providers under the same or similar circumstances.

120. Defendants owed Plaintiff a duty to provide medically appropriate care, to avoid unnecessary and harmful medical procedures, to obtain voluntary and informed consent before performing medical procedures, to refrain from using medical procedures as a tool of coercive correctional control, and to respond appropriately to Plaintiff's serious medical and mental-health needs.

121. Defendant Ronan breached the applicable standard of care by conducting an invasive vaginal and anal examination without medical necessity, without a warrant or court order, without voluntary and informed consent, and without using reasonable less intrusive alternatives.

122. Defendant Ronan further breached the applicable standard of care by manipulating and removing Plaintiff's IUD without obtaining voluntary and informed consent, without adequately explaining the risks, benefits, alternatives, or medical necessity of removal, and without providing appropriate follow-up care.

123. Defendant Ronan further breached the applicable standard of care by conducting an anal cavity search using vaginal clamps, forceps, and other instruments despite the absence of medical necessity, valid consent, emergency, or legitimate medical purpose.

124. Defendant Cade breached the applicable standard of care by participating in, assisting with, facilitating, permitting, or failing to intervene in the medically unnecessary and harmful examination, IUD removal, and anal cavity search.

125. Defendant Cade further breached the applicable standard of care by failing to protect Plaintiff from unnecessary pain and injury, failing to ensure that Plaintiff had provided voluntary and informed consent, and failing to ensure that Plaintiff received appropriate care after the procedure.

126. Defendant Foto breached the applicable standard of care by failing to provide appropriate mental-health care to Plaintiff while she was confined in the dry cell, failing to respond appropriately to Plaintiff's suicidal ideation and psychological distress, and participating in, approving, or failing to intervene in the coercive process that led to the invasive search.

127. The Doe defendants (medical or mental-health providers) breached the applicable standard of care by participating in, authorizing, facilitating, or failing to intervene in Plaintiff's medically unnecessary confinement, examination, search, denial of medical accommodations, and denial of adequate follow-up care.

128. At all relevant times, the individual Defendants and Doe Defendants were acting within the course and scope of their employment, agency, or duties in connection with the operation of the Jail and the provision of medical or mental-health services to people in custody.

129. Defendant County is liable for the negligent acts and omissions of its officers, employees, agents, contractors, and persons acting on its behalf in the operation of the jail and the provision of medical and mental-health services to people in custody.

130. Defendants' conduct fell below the standard of care applicable to reasonable medical and mental-health providers under the same or similar circumstances.

131. As a direct and proximate result of Defendants' negligence, Plaintiff suffered physical pain, anal bleeding, vaginal bleeding or discharge, cramping, humiliation, emotional distress, trauma, anxiety, fear, and other damages to be proven at trial.

132. Plaintiff is entitled to recover economic damages, non-economic damages, costs, disbursements, and all other relief the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF

### State Law – Battery

### (Against Defendants County, Ronan, Cade, and John/Jane Does)

133. Plaintiff realleges and incorporates all prior paragraphs as though fully set forth herein.

134. Defendants Ronan, Cade, and Doe Defendants intentionally caused harmful and offensive contact with Plaintiff's body.

135. Defendant Ronan intentionally touched, manipulated, searched, and intruded upon Plaintiff's vagina and anus, removed Plaintiff's IUD, and used instruments during the anal cavity search.

136. Plaintiff did not provide voluntary and informed consent to the invasive vaginal search, IUD removal, or anal cavity search.

137. Any purported consent was invalid because Plaintiff was confined in coercive dry-cell conditions, was desperate to be released from those conditions, was told she was being taken for a Pap smear, and was not told that she would be subjected to an anal cavity search, search for contraband, or IUD removal.

138. The anal cavity search and IUD removal exceeded the scope of any examination Plaintiff was told would occur.

139. Defendant Cade assisted in, facilitated, participated in, permitted, or failed to intervene in the harmful and offensive contact with Plaintiff's body, despite knowing or reasonably knowing that Plaintiff had not provided voluntary and informed consent.

140. The Doe Defendants assisted in, facilitated, authorized, participated in, permitted, or failed to intervene in the harmful and offensive contact with Plaintiff's body.

141. The contact was harmful, offensive, painful, degrading, and unauthorized.

142. As a direct and proximate result of Defendants' battery, Plaintiff suffered physical pain, anal bleeding, vaginal bleeding or discharge, cramping, humiliation, emotional distress, trauma, anxiety, fear, and other damages to be proven at trial.

143. Plaintiff is entitled to recover economic damages, non-economic damages, costs, disbursements, and all other relief the Court deems just and proper.

**SEVENTH CLAIM FOR RELIEF**

**State Law – Negligence**

**(Against All Defendants)**

144. Plaintiff realleges and incorporates all prior paragraphs as though fully set forth herein.

145. Defendants owed Plaintiff a duty to exercise reasonable care under the circumstances.

146. Defendants owed Plaintiff a duty to avoid conduct that created an unreasonable risk of foreseeable physical and emotional harm.

147. Defendants owed Plaintiff a duty to take reasonable steps to protect her from unnecessary and harmful bodily intrusions, medically unnecessary procedures, coercive confinement conditions, and denial of care.

148. Defendants also owed Plaintiff a duty to respond reasonably to her serious medical needs, mental-health needs, suicidal statements, pain, bleeding, and requests for medical attention.

149. Defendant Foto breached the duty of reasonable care by failing to respond appropriately to Plaintiff's psychological distress and suicidal ideation, by failing to take reasonable steps to prevent the escalation from dry-cell confinement to an invasive bodily search, and by participating in, encouraging, approving, or failing to intervene in the belief that Plaintiff still had contraband concealed inside her body despite Plaintiff's repeated explanation and the lack of contraband found during dry-cell monitoring.

150. The Doe Defendants breached the duty of reasonable care by participating in, authorizing, facilitating, permitting, or failing to intervene in Plaintiff's coercive dry-cell

confinement, invasive search, denial of medical accommodations, and denial of adequate care after Plaintiff reported pain and bleeding.

151. At all relevant times, the individual Defendants and Doe Defendants were acting within the course and scope of their employment, agency, or duties in connection with the operation of the Jail and the provision of medical, mental health, or custodial services to Plaintiff.

152. Columbia County is liable for the negligent acts and omissions of its officers, employees, agents, contractors, and persons acting on its behalf in the operation of the jail and the provision of medical, mental health, or custodial services to people in custody.

153. Defendants' negligence was a direct and proximate cause of Plaintiff's injuries and damages.

154. As a direct and proximate result of Defendants' negligence, Plaintiff suffered physical pain, anal bleeding, vaginal bleeding or discharge, cramping, humiliation, emotional distress, trauma, anxiety, fear, medical expenses, counseling expenses, and other damages to be proven at trial.

155. Plaintiff is entitled to recover economic damages, non-economic damages, costs, disbursements, and all other relief the Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Tamara Fulmer respectfully requests that judgment be entered in her favor and against Defendants as follows:

A. For economic damages in an amount to be determined by the jury at the time of trial;

B. For non-economic damages in an amount to be determined by the jury at the time of trial;

C. For punitive damages against the individual Defendants in an amount to be determined by the jury and as permitted by law;

D. For reasonable attorney fees, litigation expenses, and costs pursuant to 42 U.S.C. § 1988 and any other applicable law;

E. For pre-judgment and post-judgment interest as allowed by law; and

F. For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

DATED: June 10, 2026

**SNYDER, POST & BURGESS**

*/s/ John Burgess*
Carl Post, OSB No. 061058
carlpost@civilrightsoregon.com
John Burgess, OSB No. 106498
johnburgess@civilrightsoregon.com
Tel: (971) 442-9303
Attorneys for Plaintiff