John Burgess, OSB No. 106498
johnburgess@civilrightsoregon.com
Carl Post, OSB No. 061058
carlpost@civilrightsoregon.com
POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
Tel: (971) 442-9303
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

TAMARA FULMER,

Plaintiff,

v.

COLUMBIA COUNTY, BRIAN PIXLEY, MARILYN CADE, RN, NANCY RONAN, DNP, SARA FOTO, MHP, and JOHN/JANE DOES 1-5,

Defendants.

Case No. 3:25-cv-00105-YY

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 53, 54, AND 55]**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... 3
INTRODUCTION ..... 8
STATEMENT OF FACTS ..... 8
STANDARD OF REVIEW ..... 11
**ARGUMENT** ..... 13
I. The court has personal jurisdiction ..... 13
A. Defendants Waived Objections Regarding Insufficient Service ..... 14
B. Rule 4(m) Requires or Permits an Extension of the Time to Effect Service ..... 16
II. Plaintiff has not failed to state a claim ..... 19
A. Plaintiff Stated § 1983 Claims ..... 20
1. Plaintiff Stated a Fourth Amendment Claim ..... 20
2. Plaintiff Stated an Eighth Amendment Claim ..... 24
3. Plaintiff Stated a Fourteenth Amendment Claim ..... 27
4. Defendants Are Not Entitled to Good-Faith Immunity ..... 30
B. Plaintiff Stated a Battery Claim ..... 32
C. Plaintiff Stated a Medical Negligence Claim ..... 34
D. Plaintiff Stated a Negligence Claim ..... 37
III. Plaintiff’s claims are not barred by the statute of limitations ..... 38
CONCLUSION ..... 41

# TABLE OF AUTHORITIES

## CASES

*Arena v. Gingrich*,
305 Or. 1, 748 P.2d 547 (1988) .......... 31

*Argonaut Ins. Co. v. St. Francis Med. Ctr.*,
17 F.4th 1276 (9th Cir. 2021) .......... 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 10, 18

*Bank of New York Mellon v. Lash*,
303 Or. App. 456, 463 P.3d 614 (2020) .......... 30

*Beck v. State of Ohio*,
379 U.S. 89 (1964) .......... 30

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 9, 10

*Bell v. Wolfish*,
441 U.S. 520 (1979) .......... 9, 19, 31

*Benny v. Pipes*,
799 F.2d 489 (9th Cir. 1986) .......... 12

*Benson v. Terhune*,
304 F.3d 874 (9th Cir. 2002) .......... 28

*Bertlin v. Seterus, Inc.*,
No. 1:17-CV-00811-CL, 2017 WL 8681967 (D. Or. Dec. 18, 2017) .......... 18

*Boudette v. Barnette*,
923 F.2d 754 (9th Cir. 1991) .......... 14

*Bouse v. Bussey*,
573 F.2d 548 (9th Cir. 1977) .......... 19

*Brower v. Cnty. of Inyo*,
884 F.2d 1316 (9th Cir. 1989) .......... 17

*Bynum v. Correct Care Sols., LLC*,
No. 21-16254, 2023 WL 2134397 (9th Cir. Feb. 21, 2023) .......... 27

*Castro v. Cnty. of Los Angeles*,
833 F.3d 1060 (9th Cir. 2016) .......... 26

*Chapman v. Mayfield*,
358 Or. 196, 361 P.3d 566 (2015) .......... 22, 35

*Clement v. City of Glendale*,
518 F.3d 1090 (9th Cir. 2008) .......... 29

*Coleman v. Meyer*,
261 Or. 129, 493 P.2d 48 (1972) .......... 12

*Colwell v. Bannister*,
763 F.3d 1060 (9th Cir. 2014) .......... 27

*Cooper v. Rogers*,
968 F. Supp. 2d 1121 (M.D. Ala. 2013) .......... 23

*Curtis v. MRI Imaging Servs. II*,
327 Or. 9, 956 P.2d 960 (1998) .......... 32

*Day v. McDonough*,
547 U.S. 198 (2006) ... 37
*De La Cruz v. Tormey*,
582 F.2d 45 (9th Cir. 1978) ... 17
*De Tie v. Orange County*,
152 F.3d 1109 (9th Cir. 1998) ... 15
*Dep't of Hum. Servs. v. M.C.-C.*,
275 Or. App. 121, 365 P.3d 533 (2015) ... 12
*Disability Rts. Montana, Inc. v. Batista*,
930 F.3d 1090 (9th Cir. 2019) ... 25
*Doe 1 v. Lake Oswego Sch. Dist.*,
353 Or. 321, 297 P.3d 1287 (2013) ... 31
*Doty v. Cnty. of Lassen*,
37 F.3d 540 (9th Cir. 1994) ... 25
*Efaw v. Williams*,
473 F.3d 1038 (9th Cir. 2007) ... 16
*Estelle v. Gamble*,
429 U.S. 97 (1976) ... 22, 24, 25
*Farmer v. Brennan*,
511 U.S. 825 (1994) ... 22, 23, 24, 29
*Fazzolari By & Through Fazzolari v. Portland Sch. Dist. No. 1J*,
303 Or. 1, 734 P.2d 1326 (1987) ... 35
*Fuller v. M.G. Jewelry*,
950 F.2d 1437 (9th Cir. 1991) ... 20
*Gandy v. Thompson*,
No. CIV. 97-185-FR, 1997 WL 369728 (D. Or. June 25, 1997) ... 23
*Gilker v. Baker*,
576 F.2d 245 (9th Cir. 1978) ... 29
*Gordon v. Cnty. of Orange*,
888 F.3d 1118 (9th Cir. 2018) ... 26
*Gregg v. Georgia*,
428 U.S. 153 (1976) ... 22, 24, 25
*Gregory v. Thompson*,
500 F.2d 59 (9th Cir. 1974) ... 28
*Grummett v. Rushen*,
779 F.2d 491 (9th Cir. 1985) ... 29
*Higuera v. Cascade Corp.*,
No. CV. 04-1693-HA, 2005 WL 1113852 (D. Or. May 9, 2005) ... 17
*Huguez v. United States*,
406 F.2d 366 (9th Cir. 1968) ... 20
*In re Sheehan*,
253 F.3d 507 (9th Cir. 2001) ... 14, 16
*Jackson v. Hayakawa*,
682 F.2d 1344 (9th Cir. 1982) ... 12, 14
*James v. United States*,
215 F.R.D. 590 (E.D. Cal. 2002) ... 36

*Jett v. Penner*,
439 F.3d 1091 (9th Cir. 2006) .................... 29
*Johnson v. Jones*,
269 Or. App. 12, 344 P.3d 89 (2015).................... 31
*Jordan v. Gardner*,
986 F.2d 1521 (9th Cir. 1993) .................... 24
*Kennedy v. Los Angeles Police Dep't*,
901 F.2d 702 (9th Cir. 1989) .................... 19, 20
*Kingsley v. Hendrickson*,
576 U.S. 389 (2015).................... 26
*Lazar v. Kroncke*,
862 F.3d 1186 (9th Cir. 2017) .................... 13
*Lemoge v. United States*,
587 F.3d 1188 (9th Cir. 2009) .................... 16
*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000).................... 11
*Lyden v. Goldberg*,
260 Or. 301, 490 P.2d 181 (1971) .................... 38
*Macy v. Blatchford*,
330 Or. 444, 8 P.3d 204 (2000) .................... 32
*Mandell v. Maurer*,
150 Or. App. 543, 946 P.2d 706 (1997).................... 31
*Martineau v. McKenzie-Willamette Med. Ctr.*,
371 Or. 247, 533 P.3d 1 (2023) .................... 34
*Martino v. Carey*,
563 F. Supp. 984 (D. Or. 1983) .................... 23, 25
*Mary Beth G. v. City of Chicago*,
723 F.2d 1263 (7th Cir. 1983) .................... 19
*Mayer v. Mayer*,
27 Or. 133, 39 P. 1002 (1895) .................... 12
*Mitchell v. Harris*,
123 Or. App. 424, 859 P.2d 1196 (1993).................... 37
*Morrison v. Mahoney*,
399 F.3d 1042 (9th Cir. 2005) .................... 37
*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) .................... 10
*New Hampshire v. Maine*,
532 U.S. 742 (2001).................... 38
*Peterson v. Highland Music, Inc.*,
140 F.3d 1313 (9th Cir. 1998) .................... 13
*Pine Ridge Park v. Fugere*,
252 Or. App. 456, 287 P.3d 1268 (2012).................... 37
*Rhodes v. Chapman*,
452 U.S. 337 (1981).................... 22
*Rowe v. Educ. Credit Mgmt. Corp.*,
559 F.3d 1028 (9th Cir. 2009) .................... 10

*Russell v. Lumitap*,
31 F.4th 729 (9th Cir. 2022) ........ 26, 27
*Sandoval v. Cnty. of San Diego*,
985 F.3d 657 (9th Cir. 2021) ........ 22, 24, 26, 29
*Scott v. Kesselring*,
370 Or. 1, 513 P.3d 581 (2022) ........ 35, 36
*Seiko Epson Corp. v. Glory S. Software Mfg., Inc.*,
No. 06-CV-236-BR, 2010 WL 4366370 ........ 13
*Shah v. Cnty. of Los Angeles*,
797 F.2d 743 (9th Cir. 1986) ........ 18
*SmileCare Dental Group v. Delta Dental Plan of Calif., Inc.*,
88 F.3d 780 (9th Cir. 1996) ........ 17
*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ........ 10, 11, 17
*Stone v. Witt*,
374 Or. 524, 581 P.3d 919 (2025) ........ 36
*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) ........ 10
*Taylor v. Yee*,
780 F.3d 928 (9th Cir. 2015) ........ 10
*Tomlinson v. Metro. Pediatrics, LLC*,
362 Or. 431, 412 P.3d 133 (2018) ........ 33, 34
*Tribble v. Gardner*,
860 F.2d 321 (9th Cir. 1988) ........ 20
*United States v. Cameron*,
538 F.2d 254 (9th Cir. 1976). ........ 21
*United States v. Colasanti*,
282 F. Supp. 3d 1213 (D. Or. 2017) ........ 37
*United States v. Fowlkes*,
804 F.3d 954 (9th Cir. 2015) ........ 19, 21
*United States v. Leon*,
468 U.S. 897 (1984) ........ 28
*West v. Atkins*,
487 U.S. 42 (1988) ........ 18
*Wilson v. Seiter*,
501 U.S. 294 (1991) ........ 22
*Winston v. Lee*,
470 U.S. 753 (1985) ........ 19
*Wolff v. McDonnell*,
418 U.S. 539 (1974) ........ 20
*Zamani v. Carnes*,
491 F.3d 990 (9th Cir. 2007) ........ 17
*Zehr v. Haugen*,
318 Or. 647, 871 P.2d 1006 (1994) ........ 32, 34

**STATUTES**

Or. Rev. Stat. § 12.020 .......... 37, 39
Or. Rev. Stat. § 12.110 .......... 36
Or. Rev. Stat. § 12.210 .......... 37, 38
Or. Rev. Stat. § 12.220 .......... 39
Or. Rev. Stat. § 677.095 .......... 33
Or. Rev. Stat. § 677.097 .......... 31

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. IV .......... 18
U.S. Const. amend. VIII .......... 25

## INTRODUCTION

Plaintiff submits the following response to Defendants Cade, Ronan and Foto's motions to dismiss (ECF Nos. 53, 54, and 55, respectively). Defendants' motions to dismiss should be denied for three reasons. First, this court has personal jurisdiction because Defendants waived their objections to service of process by appearing, litigating issues, and seeking relief which presupposed the jurisdiction of this court. Alternatively, Rule 4(m) requires or at least permits an extension of the time to effect service. Second, Plaintiff has sufficiently pleaded facts and stated each of her claims. Third, the statute of limitations does not bar Plaintiff's claims. In any event, even if the court concluded Plaintiff's state claims needed to be dismissed for lack of service, they are not barred by the statute of limitations and would only be dismissed without prejudice. Accordingly, for the reasons set forth below, Defendants' motions to dismiss should be denied.

## STATEMENT OF FACTS

On or about January 3, 2023, Plaintiff Tamara Fulmer entered Columbia County Jail to serve a 90-day sentence. ECF No. 46 ¶ 16. Ms. Fulmer suffered from fibromyalgia and Raynaud's disease, which caused chronic pain and made her vulnerable to cold temperatures. *Id*.

On or about January 8, 2023, jail staff discovered that Ms. Fulmer secreted prescribed medication inside her body and charged her with introducing contraband into a correctional facility. *Id*. ¶ 18. After the medication was discovered and removed, Ms. Fulmer did not have any additional medication or contraband hidden inside her body. *Id*.

Approximately a week and a half later, Ms. Fulmer developed hives from an allergic reaction and requested Benadryl and medical assistance. *Id*. ¶ 19. Rather than addressing her medical concern, jail staff removed her from her cell, placed her in a booking cell, and required her to provide a urine sample. *Id*.

The urine analysis came back positive for the medication Ms. Fulmer had previously brought into the jail and was taking. *Id*. ¶ 20. The medication which she was taking prior to her incarceration remained detectable in her urine for approximately thirty days and that a positive instant urine test did not mean she still had medication hidden inside her body. *Id*. Defendants continued to insist that she had additional contraband concealed inside her body, notwithstanding that they had already removed the medications from her person over a week prior. *Id*.

Defendants then placed Ms. Fulmer in a dry cell for approximately a week, where Ms. Fulmer was required to urinate and defecate into a bucket while under surveillance. *Id*. ¶ 21. Ms. Fulmer told staff that she was suicidal, and in response, staff stripped her down to a suicide smock and removed her clothing and regular bedding. *Id*. ¶ 22. Ms. Fulmer was denied adequate clothing and bedding for days despite explaining that she would suffer severe pain and loss of circulation if she became cold from Raynaud's disease. *Id*. Ms. Fulmer had previously been approved for extra blankets because of her medical needs, but those accommodations were not provided in the dry cell. *Id*. Staff continued to monitor Ms. Fulmer's urine and feces and found no contraband. *Id*. ¶ 23. Defendant Foto was Ms. Fulmer's mental health care provider during this period in which she was suicidal and confined to a dry cell and insisted, without evidence, that Ms. Fulmer still had contraband concealed inside her body. *Id*. ¶ 24. Foto contributed to Plaintiff's continued confinement and the coercive process leading to the search.

After about a week in the dry cell, Ms. Fulmer understood from Defendants' words, conduct, and the circumstances of her confinement that she would not be released from the dry cell unless she underwent a gynecological examination described as a Pap smear. *Id*. ¶ 25. Ms. Fulmer was told that she was being taken for a Pap smear when she was removed from the dry cell. *Id*. ¶ 26. Ms. Fulmer was taken to the medical unit, where Defendant Ronan performed a

vaginal examination on her in the presence of Defendant Cade and a deputy. *Id*. The examination was not supported by a warrant, court order, medical emergency, legitimate medical necessity, or voluntary and informed consent. *Id*. ¶ 27.

During the vaginal examination, Defendant Ronan observed that Ms. Fulmer had an IUD, and manipulated or pulled on the IUD in a way that caused significant pain. *Id*. ¶ 28. Ms. Fulmer told Defendant Ronan to stop pulling on it or remove it because it hurt badly whenever it was touched. *Id*. Defendant Ronan then removed the IUD, which caused immediate and severe cramping, pain, bleeding, and distress. *Id*. The vaginal examination confirmed that Ms. Fulmer had no contraband in her vagina. *Id*. ¶ 30.

Defendant Ronan proceeded to conduct an anal cavity search, despite the fact that Ms. Fulmer had not been told in advance that an anal cavity search would occur and did not consent to such a search. *Id*. Defendant Ronan used vaginal clamps, forceps, and other instruments during the anal cavity search. The clamps were inserted, removed and reinserted when they would not lock, locked open, and followed by the use of forceps while Ms. Fulmer was instructed to push. *Id*. ¶¶ 31-33. Defendant Cade was also present during the anal cavity search. *Id*. Cade knew that Ms. Fulmer had not been told about or consented to the anal search, observed her severe pain and distress, and assisted, facilitated, permitted, or failed to intervene.

Ms. Fulmer's pain worsened after the search and she experienced anal bleeding, vaginal bleeding or discharge, cramping, difficulty sitting, difficulty using the toilet, humiliation, anxiety, and emotional distress. *Id*. ¶ 37. She requested outside medical attention, which Defendants did not promptly accommodate; instead, they told Ms. Fulmer to submit a kite to medical, even though the same medical staff had just caused her injuries. *Id*. ¶¶ 37-38. Ms. Fulmer remained in restrictive or booking-cell conditions for approximately two more days and

was not provided with adequate aftercare, a shower, clean clothing, or appropriate treatment for her pain and bleeding. *Id.* ¶ 38.

The original complaint in this matter was filed on January 20, 2025. ECF No. 1. Plaintiff filed an amended complaint on January 24, 2025. ECF No. 3. Counsel appeared for the individual defendants on February 13, 2025 and filed a Notice of Suggestion of Bankruptcy and Stay. ECF Nos. 8, 9, and 10. The Notice stated that

> Pursuant to section 362 of the Bankruptcy Code, the filing of the Voluntary Petition operates as a stay of: a. "[T]he commencement or continuation, ***including the issuance or employment of process***, of a judicial, administrative, or other action or proceeding against the [D]ebtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the [D]ebtor that arose before the commencement of the case under this title[.]

ECF No. 10 at 2 (emphasis added).

On June 10, 2026, Plaintiff filed the Second Amended Complaint, alleging federal claims against Defendants including violations of the Fourth, Eighth, and Fourteenth Amendments and municipal liability, along with claims of medical negligence, battery, and negligence under state law. ECF No. 46. The Second Amended Complaint added no new defendants. On July 10, 2026, Defendants Ronan, Cade, and Foto filed motions to dismiss. ECF Nos. 53, 54, and 55. On July 24, 2026, Defendants Pixley and Columbia County filed an answer and affirmative defenses to the Second Amended Complaint. ECF No. 67.

## STANDARD OF REVIEW

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint is sufficient if it provides a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "This simplified notice pleading standard relies on liberal

discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

A motion to dismiss is appropriate only if there is no cognizable legal theory or the complaint lacks sufficient facts alleged to support a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). A complaint survives a motion to dismiss if it contains enough facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) ("The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'") (quoting *Iqbal*, 556 U.S. at 681). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556.

The probability of success is not a factor in determining if a complaint contains facts sufficient to show entitlement to relief. *Id*. Instead, the complaint is only required to contain facts that raise a reasonable expectation that discovery will reveal evidence of illegal conduct. *Id*. The complaint may proceed even if the Court determines that actual proof of those facts is improbable or that recovery is very remote and unlikely. *Id.* In reviewing the complaint, the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Id*.; *Rowe v. Educ. Credit Mgmt. Corp*., 559 F.3d 1028, 1029-30 (9th Cir. 2009) (citation and quotation omitted). To be entitled to this presumption, "allegations in a complaint or counterclaim may not simply recite the elements of a cause of

action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr*, 652 F.3d at 1216.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted).

## ARGUMENT

Defendants Cade, Ronan, and Foto's motions to dismiss should be denied because they erroneously contend that Plaintiff's claims fail on the merits, which is not the correct standard for a motion to dismiss. Rather, Plaintiff has sufficiently alleged relevant facts and stated each of her claims as required. Defendants further argue that the court lacks jurisdiction because Plaintiff failed to serve them and that her claims are barred under the statute of limitations. Yet Defendants, in practice, have waived such objections and affirmative defenses by, respectively, appearing in the litigation and failing to raise these defenses earlier. Thus, granting dismissal is inappropriate.

### I. The court has personal jurisdiction.

All Defendants contend that they have not properly been served by Plaintiff and that the Service of Process is insufficient. Yet Defendants have, in fact, been served with summons in this lawsuit. *See* ECF Nos. 56, 57, and 58. Regardless, Defendants Cade, Ronan, and Foto effectively waived their objections regarding insufficient service of process by formally appearing through counsel, requesting relief, and seeking dismissal. *See* ECF No. 52; Fed. R. Civ. P. 12(h). Having received actual notice of the claims, Defendants actively participated in court conferences and litigation concerning the disposition of Plaintiff's claims, sought to stay

the claims pending bankruptcy proceedings, and had numerous opportunities to assert objections regarding insufficient service until now.

**A. Defendants Waived Objections Regarding Insufficient Service.**

"Defendants can waive the defect of lack of personal jurisdiction by appearing generally without first challenging the defect in a preliminary motion," as here. *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982). "A general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986), amended, 807 F.2d 1514 (9th Cir. 1987). Here, by appearing in the litigation and requesting affirmative relief, Defendants waive any objections regarding personal jurisdiction. *See* ECF No. 17.

That conclusion follows under Oregon law as well. Oregon requires a party asserting a defect in service to raise the objection "at the earliest possible occasion." *Dep't of Hum. Servs. v. M.C.-C.*, 275 Or. App. 121, 124, 365 P.3d 533 (2015). A party that appears and requests relief that may be granted only on the assumption that the court has personal jurisdiction, without promptly objecting to service, waives the objection and submits to the court's jurisdiction as completely as if properly served. *Id.*; *Coleman v. Meyer*, 261 Or. 129, 131, 493 P.2d 48 (1972). ("Whether it be before or after judgment, a party waives all irregularities in the service of process when he appears generally and asks to plead and defend upon the merits of the case."); *see also Mayer v. Mayer*, 27 Or. 133, 139, 39 P. 1002 (1895) (concluding that a party who appears in court and "asks some relief which can be granted only on the assumption that the court has jurisdiction of his person * * * will be deemed to have entered a general appearance, and submitted himself to the jurisdiction of the court, as completely as if regularly served by process").

Further, "the defense of lack of personal jurisdiction may be waived as a result of the course of conduct pursued by a party during litigation." *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998), *as amended on denial of reh'g and reh'g en banc* (June 15, 1998). "Generally, waiver of the defense of personal jurisdiction requires a showing of conduct inconsistent with raising or maintaining the defense," which Defendants have demonstrated here by appearing in the lawsuit and continuing to litigate Plaintiff's claims on the merits rather than consistently pursuing this defense. *Lazar v. Kroncke*, 862 F.3d 1186, 1200–01 (9th Cir. 2017). Notably, Defendant Ronan mentions *nowhere* in her motion to dismiss that the court lacks personal jurisdiction, nor does Defendant explain in any level of detail how Plaintiff did not properly serve Defendant Ronan, which precludes her from being able to claim such a defense.[1]

In practice, Defendants "waived any objection to the Court's exercise of personal jurisdiction" in this case "by actively participating in defending against [Plaintiff]'s claims." *Seiko Epson Corp. v. Glory S. Software Mfg., Inc.*, No. 06-CV-236-BR, 2010 WL 4366370, at *3 (D. Or. Oct. 28, 2010) (defendant "waived its right to assert any defense in this case that the Court lacks personal jurisdiction"). In doing so, Defendants effectively engage in "'sandbagging' by raising the issue of personal jurisdiction on a motion to dismiss," and cannot continue to litigate the claims against them while simultaneously asserting a jurisdictional defense over a year into the litigation. *Peterson*, 140 F.3d at 1318.

> An objection to personal jurisdiction, for example, has been forfeited where, after properly preserving the objection in its answer, a defendant then "fully participated in litigation of the merits for over two-and-a-half years without actively contesting personal jurisdiction." *Cont'l Bank v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993); *see also Barnes v. Sea Hawaii Rafting, LLC*, 889

[1] While she joins Defendant Cade's motion, that motion was about Cade, not Defendant Ronan. *See* ECF Nos. 53, 55. Joining that motion does not raise the same issues for Defendant Ronan simply by referencing another motion.

> F.3d 517, 530 (9th Cir. 2018) ("[D]efendants had clearly waived any objection to in rem jurisdiction by litigating the merits of Barnes's claims for more than 15 months.").

*Argonaut Ins. Co. v. St. Francis Med. Ctr.*, 17 F.4th 1276, 1283 (9th Cir. 2021).

It follows, then, that "these defendants were either properly served or, if not properly served, they waived any defect in service or personal jurisdiction by appearing generally." *Jackson*, 682 F.2d at 1347. Accordingly, the court has personal jurisdiction.

**B. Rule 4(m) Requires or Permits an Extension of the Time to Effect Service.**

However, even if the court concludes that defendants did not waive service, Rule 4(m) still does not require dismissal. While Rule 4(m) directs the court either to dismiss without prejudice or to order service within a specified time, if good cause exists, the court must extend the deadline; even without good cause, the court retains discretion to grant an extension. Fed. R. Civ. P. 4(m); *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001). Although the rules do not define "good cause," "[a]t a minimum, 'good cause' means excusable neglect." *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991). In determining good cause, courts consider factors including whether "(a) the party to be served received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed." *Id.* Good cause exists here, as Plaintiff reasonably refrained from attempting formal service while the bankruptcy stay remained in effect because service itself could have violated the stay.

On February 13, 2025, counsel appeared for Wellpath and Defendants Cade, Ronan, and Foto, and filed Wellpath's Suggestion of Bankruptcy and Notice of Stay. ECF Nos. 8–10. The Notice expressly quoted the Bankruptcy Code's statutory language staying "the commencement or continuation, including the issuance or employment of process," and asserted that the stay

extended to Wellpath's current and former employees. ECF No. 10 at 2–5; *see* 11 U.S.C. § 362(a)(1). Notably, the Notice represented that "all parties" were prohibited from further continuing this action and reserved the right to seek relief for any violation of the stay, implicating Plaintiff's claims against the nondebtor Defendants. *Id*.

The court responded by vacating all pending deadlines. ECF No. 11. Defendants Cade, Ronan, and Foto later joined Wellpath's Notice of Discharge and Injunction and participated in extended briefing and hearings concerning whether the claims against them could proceed. The court stayed the proceedings while that issue was resolved. At no point during that litigation did Defendants contend that Plaintiff was required to disregard the asserted stay and serve them with summonses.

Controlling Ninth Circuit authority forecloses dismissal on these facts. In *De Tie v. Orange County*, 152 F.3d 1109 (9th Cir. 1998), a § 1983 plaintiff delayed service because a municipal bankruptcy stay prohibited the "issuance or employment of process" and the district court had removed the case from its active calendar. The Ninth Circuit held that the stay constituted good cause under Rule 4(m). It further held that, even if service was not technically prohibited, the plaintiff's reasonable belief that he was legally constrained from serving constituted good cause. *Id*. at 1111–12.

The same conclusion follows here. Plaintiff could not reasonably be expected to risk violating a bankruptcy-court injunction and potentially subject herself or counsel to enforcement proceedings merely to preserve service deadlines in an action that Defendants represented could not proceed; she was thus entitled to comply with those representations and orders rather than risk violating the bankruptcy stay. Good cause therefore requires an extension under Rule 4(m), and the service completed pursuant to that extension should be deemed timely.

Even if the court ultimately concludes that the bankruptcy stay did not technically prohibit service on the individual Defendants, the scope of the stay and Defendants' unequivocal representations provided an objectively reasonable basis for Plaintiff's decision not to proceed with service. That circumstance establishes good cause under Rule 4(m), or, at a minimum, strongly supports a discretionary extension. Defendants should not be permitted to obtain a stay by representing that further process was prohibited and then seek dismissal because Plaintiff refrained from undertaking the very process Defendants maintained was stayed.

Regardless of whether Plaintiff has established good cause, the court should exercise its discretion to extend the service period. Rule 4(m) gives district courts broad discretion to grant an extension even without good cause. *In re Sheehan*, 253 F.3d at 513; *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007). In exercising that discretion, the court may consider factors including a possible statute-of-limitations bar, prejudice to defendants, actual notice of the lawsuit, and eventual service. *Efaw*, 473 F.3d at 1041; *see also Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009) (explaining that an extension is appropriate where dismissal would prevent refiling because the limitations period has run).

The remaining circumstances independently favor an extension. Defendants have had actual notice since at least February 2025, have been continuously represented, and have actively participated in the case. They identify no prejudice from service now. Plaintiff, by contrast, would face severe prejudice from dismissal because the limitations periods on claims arising from the January 2023 incident have expired or may be disputed. Plaintiff is prepared to complete formal service promptly and requests 28 days to do so. Under these circumstances, dismissal would elevate a curable technical issue over adjudication on the merits.

**II. Plaintiff has not failed to state a claim.**

Defendants Cade, Ronan, and Foto all allege that Plaintiff fails to state claims upon which relief can be granted pursuant to FRCP 12(b)(6). "Generally, dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is denied 'unless it appears beyond doubt that plaintiff can prove no set of facts in support of his or her claim' that would entitle plaintiff to relief." *Higuera v. Cascade Corp.*, No. CV. 04-1693-HA, 2005 WL 1113852, at *1 (D. Or. May 9, 2005) (quoting *SmileCare Dental Group v. Delta Dental Plan of Calif., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996)). "A dismissal for failure to state a claim 'cannot be upheld unless it appears to a certainty that the plaintiff would not be entitled to relief under *any* set of facts that could be proved.' Here, it cannot be said with certainty" that Plaintiff is wholly precluded from relief based on the facts alleged. *Brower v. Cnty. of Inyo*, 884 F.2d 1316, 1318 (9th Cir. 1989) (emphasis added) (internal citation omitted).

In attempting to justify that Plaintiff failed to state each of her claims, Defendants assert that each of Plaintiff's claims fail on the merits. Yet whether a claim is likely to succeed on the merits is not the appropriate standard for determining whether a claim has been stated. *See De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978) ("The issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims."); *Zamani v. Carnes*, 491 F.3d 990, 996 (9th Cir. 2007) ("The relevant inquiry for a Rule 12(b)(6) motion is not whether the plaintiff has demonstrated a likelihood of success on the merits"); *Starr*, 652 F.3d at 1216-17 ("The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable."). Rather, "[i]n order to state a claim for relief, a pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bertlin v. Seterus, Inc.*, No. 1:17-CV-

00811-CL, 2017 WL 8681967, at *2 (D. Or. Dec. 18, 2017), *report and recommendation adopted*, No. 1:17-CV-00811-CL, 2018 WL 1547359 (D. Or. Mar. 29, 2018) (quoting Rule 8(a)(2)). Plaintiff has accordingly done so and has sufficiently proved facts for each claim she alleges, which amount to more than "bare assertions" and "plausibly suggest an entitlement to relief," thus precluding dismissal. *Iqbal*, 556 U.S. at 681; *see* ECF No. 46.

**A. Plaintiff Stated § 1983 Claims.**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (holding that a physician providing medical services to inmates at a state-prison hospital "acted under color of state law for purposes of § 1983"); *see Shah v. Cnty. of Los Angeles*, 797 F.2d 743, 746 (9th Cir. 1986) (holding that plaintiff's complaint alleging Deputy Sheriffs' unconstitutional conduct while he was in pretrial detention satisfied the "color of law" condition for § 1983 actions). The dispositive term here is "allege," for sufficiently stating a 1983 claim requires no more than merely *alleging* a constitutional violation, not proving its merits. Plaintiff has done just that. As such, Plaintiff has appropriately met these requirements in each of her claims alleging violations of the Fourth, Eighth, and Fourteenth Amendments. Notwithstanding this disparity, however, Plaintiff *has* adequately established a likelihood of prevailing on the merits of each claim in addition to sufficiently stating those claims.

**1. Plaintiff Stated a Fourth Amendment Claim.**

The Fourth Amendment enshrines "[t]he right of the people to be secure in their persons." U.S. Const. amend. IV. Here, Defendants stripped Plaintiff of that very right. Plaintiff "was subjected to a painful and humiliating invasion upon the most intimate parts of [her]

anatomy, and when [Defendants] perform such [a] [search], they are bound to comply with the requirements of the fourth and fourteenth amendments." *Bouse v. Bussey*, 573 F.2d 548, 550 (9th Cir. 1977). There is "little doubt that society is prepared to recognize as reasonable the retention of a limited right of bodily privacy even in the prison context." *Covino v. Patrissi*, 967 F.2d 73, 78 (2d Cir. 1992); *see also Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1272 (7th Cir. 1983) (there are "few exercises of authority by the state that intrude on the citizen's privacy and dignity as severely as the visual anal and genital searches practiced here.").

In particular, "searches that require intrusion into a person's body implicate greater constitutional concerns." *United States v. Fowlkes*, 804 F.3d 954, 961 (9th Cir. 2015). "The intrusiveness of a body-cavity search cannot be overstated," and it is well accepted that "visual exploration of body cavities is dehumanizing and humiliating." *Kennedy v. Los Angeles Police Dep't*, 901 F.2d 702, 711 (9th Cir. 1989). "[W]hile visual cavity searches that do not require physical entry into a prisoner's body are generally permissible without a warrant during the jail intake process, physical cavity searches," like that which occurred here, "are not." *Fowlkes*, 804 F.3d at 961 (quoting *Winston v. Lee*, 470 U.S. 753, 760 (1985)). In conducting an anal cavity search without prior consent, Defendants subjected Plaintiff to "a physically invasive, painful experience and thereby implicating [her] 'most personal and deep-rooted expectations of privacy.'" *Id*. at 962 (quoting *Winston*, 470 U.S. at 760).

In assessing the constitutionality of body-cavity searches of inmates, the Supreme Court requires "balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). In other words, there must be a "'mutual

accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application,'" which "applies equally to pretrial detainees and convicted prisoners." *Id*. at 521 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). Traditionally, "body cavity searches of detainees may be conducted based on reasonable suspicion only where such searches are necessary to protect the overriding security needs of the institution—that is, where officials have a reasonable suspicion that a particular detainee harbors weapons or dangerous contraband." *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1447 (9th Cir. 1991).

Here, in contrast, Defendants have not proved that the anal cavity search was "reasonably related to legitimate penological objectives." *Tribble v. Gardner*, 860 F.2d 321, 324 (9th Cir. 1988). For one, Defendants "never contended that the search of [Plaintiff] was necessary to maintain jail security." *Id*. Rather, Defendants "have offered no evidence" that Plaintiff's medication "posed any threat to the safety of other detainees, or to the security of the jail." *Id*. (holding that "warrantless visual body cavity inspections were unconstitutional"). "Nor were there any other circumstances that provided reasonable suspicion to believe that [Plaintiff] concealed contraband," given that the medication had already been removed from Plaintiff's person. *Kennedy*, 901 F.2d at 716; ECF No. 46 ¶ 35. Absent a warrant, court order, medical necessity, or legitimate penological need, the anal cavity search was an overt violation of Plaintiff's constitutional rights. *See Huguez v. United States*, 406 F.2d 366, 374 (9th Cir. 1968) (holding that the "intrusive invasion" of plaintiff's rectal cavity violated the Fourth Amendment "without a warrant, because there was no 'clear indication' that the cavity contained narcotics"). It follows then, while "viewing the evidence in the light most favorable to [Plaintiff], there is

sufficient evidence that a reasonable person would have known that such searches violated [Plaintiff]'s clearly established rights." *Tribble*, 860 F.2d at 325.

However, even if Defendants did have reason to suspect that Plaintiff still possessed medication inside her body, "a clear indication that the suspect is concealing contraband does not authorize government officials to resort to any and all means at their disposal to retrieve it." *United States v. Cameron*, 538 F.2d 254, 258 (9th Cir. 1976). "Any body search, if it is to comport with the reasonableness standard of the fourth amendment, must be conducted with regard for the subject's privacy and be designed to minimize emotional and physical trauma," which Defendants entirely disregarded here. *Id*.

> In addition to the fears and anxieties harbored by most suspects, the person accused of concealing contraband within his body is faced with the real prospect that the most intimate portions of his anatomy will be invaded and that he will suffer resulting pain or even physical harm … In a situation thus laden with the potential for fear and anxiety, a reasonable search will include, beyond the usual procedural requirements, reasonable steps to mitigate the anxiety, discomfort, and humiliation that the suspect may suffer.

*Id*. (holding that the search violated the Fourth Amendment).

Rather than mitigating these factors, Defendants' conduct heightened them, leaving Plaintiff with physical injuries, pain, humiliation, emotional distress, trauma, anxiety, and fear. ECF No. 46 ¶ 46. Moreover, "the relatively small numbers of inmates concealing contraband in their body cavities undercuts any argument that it would be impractical to take additional 'steps to mitigate the anxiety, discomfort, and humiliation that ... suspect[s] [like Plaintiff] may suffer.'" *Fowlkes*, 804 F.3d at 967 (quoting *Cameron*, 538 F.2d at 258). "One step in particular, obtaining a warrant, would place very little burden" on Defendants, which they failed to obtain here. *Id*. If Defendants truly had adequate reason to suspect that Plaintiff possessed contraband, as they assert, then nothing should have stopped them from obtaining a warrant or court order to

conduct the anal cavity search. Nor do Defendants offer any explanation for not doing so. Consequently, Defendants' "failure to secure a warrant is yet another way in which they did not mitigate the risk of physical and emotional trauma associated with" the violative search of Plaintiff's anal cavity. *Id*. at 966. Thus, Plaintiff has sufficiently stated her Fourth Amendment claim against Defendants Ronan and Cade.

**2. Plaintiff Stated an Eighth Amendment Claim.**

"In order to state a cognizable claim" under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Plaintiff has precisely done so here, establishing that Defendants acted with "deliberate indifference to [her] serious medical needs" and caused her "'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id*. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

Firstly, under the objective prong, prison officials violate the Eighth Amendment when an alleged deprivation is "sufficiently serious" and "may deprive inmates of the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see Farmer v. Brennan*, 511 U.S. 825 (1994). In particular, a facility's "denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose," as here. *Estelle*, 429 U.S. at 103. "Individuals in state custody have a constitutional right to adequate medical treatment," which Plaintiff was deprived of. *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021). Plaintiff's serious medical needs are constitutionally significant because "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle*, 429 U.S. at 103.

Here, as a result of Defendants' conduct, Plaintiff experienced severe physical pain, vaginal and anal bleeding, and cramping, all of which equates to such "unnecessary suffering" that "is inconsistent with contemporary standards of decency" and contravenes constitutional safeguards. *Id*. at 104; ECF No. 46 ¶ 79. "Prolonged vaginal bleeding, particularly when accompanied by pain," which Plaintiff experienced here, "is a serious medical condition that is indeed 'so obvious that even a lay person would easily recognized the necessity for a doctor's attention,'" and Defendants failed to appropriately respond to such a serious medical need. *Cooper v. Rogers*, 968 F. Supp. 2d 1121, 1131 (M.D. Ala. 2013).

Moreover, this court has long held that "[f]unctioning plumbing, including toilets, sinks and showers, is a basic necessity of civilized life" and is "constitutionally required." *Martino v. Carey*, 563 F. Supp. 984, 999 (D. Or. 1983). Yet Defendants disregarded this when placing Plaintiff in a filthy, unsanitary dry cell with no toilet and no sink. ECF No. 46 ¶ 21. Such unhygienic conditions "impose 'cruel and unusual' punishment upon convicted persons and impose 'punishment' upon pre-trial detainees." *Martino*, 563 F. Supp. at 999.

Under the subjective prong, a prison official engages in unconstitutional conduct when "act[ing] with 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 826.

> In cases involving conditions of confinement, the subjective component of the Eighth Amendment requires a showing that the prison official knew of and disregarded an excessive risk to inmate health or safety, the official must have been aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and he must have drawn the inference.

*Gandy v. Thompson*, No. CIV. 97-185-FR, 1997 WL 369728, at *3 (D. Or. June 25, 1997).

Accordingly, "[i]f a prison administrator decides to ignore grave suffering because of irrelevant or unimportant concerns," as Defendants have done, "that administrator demonstrates a deliberate indifference to the harm being done and to the constitutional principle at stake."

*Jordan v. Gardner*, 986 F.2d 1521, 1529 (9th Cir. 1993). Simply put, "a prison official who is aware that an inmate is suffering from a serious acute medical condition violates the Constitution when he stands idly by rather than responding with reasonable diligence to treat the condition." *Sandoval*, 985 F.3d at 680. This is precisely what Defendants did.

Here, it is evident that Defendants acted with "deliberate indifference to serious medical needs" because they placed Plaintiff in a cold dry cell and denied her adequate clothing and bedding despite their awareness that such deprivation would cause severe pain. *Estelle*, 429 U.S. at 104; ECF No. 46 ¶ 22. Nor do Defendants, in *any* of their motions to dismiss, dispute or address these allegations. Notwithstanding that Plaintiff explained that she had Raynaud's disease and would suffer from a loss of circulation under cold conditions, Defendants knowingly disregarded this information and kept Plaintiff's cell cold, failing to address her medical needs. ECF No. 46 ¶ 22. It is especially apparent that Defendants were aware of the risks to Plaintiff's health and accordingly drew an inference because Plaintiff had previously been approved for extra blankets for her medical needs. *Id*. Such accommodations are not freely provided to inmates without concrete justifications and evidence of serious medical needs. In other words, Defendants knew that Plaintiff "face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Additionally, Defendants' anal cavity search and vaginal examination of Plaintiff were so "totally without penological justification that it result[ed] in the gratuitous infliction of suffering," especially because Defendants had already removed the medication from Plaintiff's person prior, which would regardless remain detectable in her urine for approximately thirty days. *Gregg*, 428 U.S. at 183; ECF No. 46 ¶ 20. By disregarding these facts, conducting these invasive procedures absent informed and voluntary consent, and proceeding to remove

Plaintiff's IUD, Defendants caused the "arbitrary and purposeless infliction of pain without penological justification." *Martino*, 563 F. Supp. at 998. Such intrusive actions without medical necessity, valid consent, or reasonable penological justification are both blatantly "cruel and unusual." U.S. Const. amend. VIII.

Along with the existing "unnecessary and wanton infliction of pain" Plaintiff already experienced from the vaginal examination and anal cavity search, Defendants went even further by also failing to promptly provide Plaintiff with adequate aftercare, a shower, or medical treatment for her pain and bleeding, thereby worsening her pain. *Gregg*, 428 U.S. at 173; ECF No. 46 ¶ 38. The same applies for Defendants' failure to provide Plaintiff with appropriate mental health care after being informed that she was suicidal, as Defendants' conduct instead caused her even more anxiety and distress rather than making any effort to address her psychological needs. ECF No. 46 ¶ 68. "[T]he Eighth Amendment's prohibition against cruel and unusual punishment requires that prisons provide mental health care that meets 'minimum constitutional requirements,'" which Defendants did not provide here. *Disability Rts. Montana, Inc. v. Batista*, 930 F.3d 1090, 1097 (9th Cir. 2019); *see Doty v. Cnty. of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) ("the requirements for mental health care are the same as those for physical health care needs"). Such "deliberate indifference to serious medical needs" and failure to address Plaintiff's physical and psychological needs effectively infringed upon her constitutional rights. *Estelle*, 429 U.S. at 106.

**3. Plaintiff Stated a Fourteenth Amendment Claim.**

The Eighth Amendment provides the mechanism for prisoners to raise constitutional claims. *See id*. "However, pretrial detainees have not yet been convicted of a crime and therefore are not subject to punishment by the state. Accordingly, their rights arise under the Fourteenth

Amendment's Due Process Clause," relevant here given that Plaintiff was a pretrial detainee facing new charges during the alleged events. *Sandoval*, 985 F.3d at 667; ECF No. 46 ¶ 82. Such "claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard." *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018); *see Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

> Under *Gordon*, a pretrial detainee who brings an inadequate medical care claim must show that:
>
> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (ii) those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Russell v. Lumitap*, 31 F.4th 729, 739 (9th Cir. 2022) (quoting *Gordon*, 888 F.3d at 1125).

In applying the Fourteenth Amendment's framework here, it remains undisputed that Defendants made "intentional decisions" when failing to adequately provide Plaintiff with (1) clothing and bedding in the dry cell, (2) aftercare following the vaginal examination and anal cavity search, and (3) mental health care. *Id*.

First, with regard to the facts of the dry cell, the cold conditions placed Plaintiff at "substantial risk of suffering serious harm," experiencing severe pain, and losing circulation

because of her Raynaud's disease. *Id.*; ECF No. 46 ¶ 22. Therefore, "a reasonable person in [Defendants'] circumstances would have inferred that [Plaintiff] was at serious risk if not" provided with adequate bedding and clothing, particularly because Defendants had knowledge of her medical condition and prior accommodations. *Id*. at 744; ECF No. 46 ¶ 22.

Second, as for the inadequate aftercare, Defendants' failure to promptly send Plaintiff for outside care or provide a shower, clean clothing, or appropriate treatment did not just put Plaintiff at a "substantial *risk* of suffering serious harm"—rather, Plaintiff *did* experience serious harm because of their actions. *Id*. at 739 (emphasis added); ECF No. 46 ¶ 38. The severity of such deliberate indifference from Defendants cannot be overstated; the presence of vaginal and anal bleeding, though not always "life-threatening," is "no trifling matter either. It is not a bump or scrape or tummy ache," but rather a serious medical need which caused Plaintiff immense pain, emotional distress, and anxiety. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014); ECF No. 46 ¶ 84. It is clear that "a reasonable doctor or patient would find" Plaintiff's "chronic and substantial pain," cramping, and vaginal and anal bleeding as "important and worthy of comment or treatment," which Defendants failed to address. *Russell*, 31 F.4th at 739 (quoting *Colwell*, 763 F.3d at 1066).

Third, with respect to Plaintiff's mental health, "[t]he Due Process Clause of the Fourteenth Amendment guarantees that pretrial detainees 'receive constitutionally adequate medical and mental health care.'" *Bynum v. Correct Care Sols., LLC*, No. 21-16254, 2023 WL 2134397, at *2 (9th Cir. Feb. 21, 2023) (internal citation omitted). Yet Defendants did not provide Plaintiff with such "constitutionally adequate" care. *Id*. After being informed that Plaintiff was suicidal, Defendants did not make any effort to address her mental health concerns, and instead subjected her to humiliation, emotional distress, trauma, anxiety, and fear. ECF No.

46 ¶ 95. Rather than taking appropriate measures in response to Plaintiff's suicidal ideation, their conduct ultimately worsened her mental health and failed to meet constitutional standards.

Further, Plaintiff possesses "the right to be secure in one's person," which "is grounded in the due process clause of the Fourteenth Amendment." *Gregory v. Thompson*, 500 F.2d 59, 62 (9th Cir. 1974). Defendants blatantly violated this right by conducting an invasive anal cavity search without prior notification or penological justification, removing Plaintiff's IUD without informed consent, and causing Plaintiff fear, trauma, and humiliation. "The due process clause of the Fourteenth Amendment substantively protects a person's rights to be free from unjustified intrusions to the body, to refuse unwanted medical treatment and to receive sufficient information to exercise these rights intelligently," which Defendants overrode by not providing Plaintiff with such "sufficient information" about the procedures and their "nature" or "effects." *Benson v. Terhune*, 304 F.3d 874, 884 (9th Cir. 2002) (internal citations omitted). Such conduct runs afoul of the safeguards that the Fourteenth Amendment enshrines.

Having satisfied both the objective and subjective prongs, Plaintiff has successfully stated her Fourteenth Amendment claim against Defendants, and dismissal is thus inappropriate.

**4. Defendants Are Not Entitled to Good-Faith Immunity.**

It has been settled that "[t]here is no need for courts to adopt the inflexible practice of always deciding whether the officers' conduct manifested objective good faith before turning to the question whether the Fourth Amendment has been violated." *United States v. Leon*, 468 U.S. 897, 924 (1984). Here, the outrageous violation of Plaintiff's constitutional rights outweighs any convenient excuse of "good faith" that Defendant Ronan may offer. Under Ninth Circuit jurisprudence, "it does not follow that an unreasonable ignorance of the law or an entirely subjective 'good faith' belief is always a defense in section 1983 damage actions." *Gilker v.*

*Baker*, 576 F.2d 245, 247 (9th Cir. 1978). Rather, a defendant can only establish this defense "by showing that he had *no* reasonable basis for knowing that his conduct would result in the overriding of another person's constitutional rights and that he acted in good faith." *Id*. (emphasis added). This was not the case here.

Longstanding case law "make[s] clear that prison officials violate the Constitution when they 'deny, delay or intentionally interfere' with needed medical treatment." *Sandoval*, 985 F.3d at 679 (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). Prison officials have an affirmative duty under the Eighth Amendment to "provide humane conditions of confinement" and "must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer*, 511 U.S. at 832. The long line of precedent establishing inmates' and pretrial detainees' constitutional rights at the hands of prison officials' conduct extinguishes any argument that Defendants had absolutely "no reasonable basis" for concluding that their actions were unconstitutional. *Gilker*, 576 F.2d at 247. *See Grummett v. Rushen*, 779 F.2d 491 (9th Cir. 1985) (recognizing inmates' right to bodily privacy).

In contrast from the cases Defendant Ronan relies upon, such as *Clement v. City of Glendale*, where the defendant "did its best to follow the law and had no reason to suspect that there would be a constitutional challenge to its actions," the same cannot be said here. 518 F.3d 1090, 1097 (9th Cir. 2008); ECF No. 53 at 8-9. Had Defendants truly done their "best to follow the law," they would have obtained a warrant or court order prior to conducting the vaginal examination and anal cavity search. *Id*. Had Defendants acted with genuine "good faith," they would have given Plaintiff prior notice or a meaningful explanation of the procedures and sought informed consent before removing her IUD. Yet they did not do so. As such, Defendants' failure to take these steps is indicative of their lack of good faith.

"If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate," and inmates "would be 'secure in their persons' … only [at] the discretion" of correctional staff. *Beck v. State of Ohio*, 379 U.S. 89, 97 (1964). Allowing Defendants to override Plaintiff's constitutional rights and bodily privacy here under the mere guise of "good faith" would render the Fourth Amendment meaningless and set a dangerous precedent in the prison context. This court should not take that step today.

**B. Plaintiff Stated a Battery Claim.**

Defendants contend that Plaintiff fails to state a battery claim under state law because it is "confusing" and "not well-pled." ECF No. 53, p. 11. It is unclear what is confusing about this claim or how it is not well pled. Plaintiff alleges that "Defendant Ronan intentionally touched, manipulated, searched, and intruded upon Plaintiff's vagina and anus, removed Plaintiff's IUD, and used instruments during the anal cavity search." ECF No. 46 ¶ 135. Plaintiff further alleges that this was done without her consent and that "Defendant Cade assisted in, facilitated, participated in, permitted, or failed to intervene in the harmful and offensive contact with Plaintiff's body, despite knowing or reasonably knowing that Plaintiff had not provided voluntary and informed consent." *Id*. ¶¶ 136-139. This plainly alleges a claim of battery under Oregon law.

Regardless, "[e]ven vague allegations on an element of a claim for relief are sufficient to survive a motion to dismiss." *Bank of New York Mellon v. Lash*, 303 Or. App. 456, 462, 463 P.3d 614 (2020). "To constitute liability for a battery, the conduct which brings about the harm must be an act of volition on the actor's part, and the actor must have intended to bring about a harmful or offensive contact or put the other party in apprehension thereof." *Bakker v. Baza'r, Inc.*, 275 Or. 245, 249, 551 P.2d 1269 (1976). This was the case here, as the intrusive anal cavity

search, vaginal examination, and IUD removal intentionally caused harmful, offensive contact with Plaintiff's body. ECF No. 46 ¶¶ 134-135.

"'Offensive contact' is defined as contact that offends a reasonable sense of personal dignity. Thus, to be tortious, a defendant's physical contact must be harmful or offensive in nature." *Doe 1 v. Lake Oswego Sch. Dist.*, 353 Or. 321, 330, 297 P.3d 1287 (2013) (internal citation omitted). It goes without saying that the unexpected and unconsented to physical intrusion, touching, and manipulation of Plaintiff's vagina and anus was "one of the most grievous offenses against personal dignity and common decency." *Bell*, 441 U.S. at 576-577 (Marshall, J., dissenting). Plaintiff's allegations undoubtedly satisfy the standards of offensive conduct and are thus "sufficient to support a nonspeculative inference that [Defendant Ronan] knew that [s]he was subjecting plaintiff to a contact that would 'offend a reasonable sense of personal dignity.'" *Johnson v. Jones*, 269 Or. App. 12, 19, 344 P.3d 89 (2015) (quoting *Doe*, 353 Or. at 330, 297 P.3d 1287).

Furthermore, Defendants failed to obtain Plaintiff's "informed consent" here because they did not "explain (a) in general terms the procedure or treatment to be undertaken, (b) any alternative treatments available, and (c) the risks, if any, of the procedure or treatment," and their "failure to explain the foregoing caused plaintiff injury." *Mandell v. Maurer*, 150 Or. App. 543, 546, 946 P.2d 706 (1997) (citing *Arena v. Gingrich*, 305 Or. 1, 6–7, 748 P.2d 547 (1988)); Or. Rev. Stat. § 677.097. In denying these allegations, Defendants erroneously state that Plaintiff's claim fails because she asked Defendant Ronan to remove the IUD. ECF No. 53, p.11. Yet this is not accurate; in reality, Plaintiff told Defendant Ronan to "stop pulling on it *or* remove it," and Defendant Ronan took no actions to explain the risks, benefits, or alternatives of either option. ECF No. 46 ¶ 28 (emphasis added).

While in such a vulnerable state of pain, fear, and discomfort, Plaintiff's purported consent was also invalid. *Id.* ¶ 137. Especially because Plaintiff was not provided with a meaningful explanation of the procedure nor given any meaningful opportunity to refuse, the substantial fear, offensive contact, humiliation, and severe pain and intrusion that Plaintiff experienced significantly interfered with her ability to make an informed decision about the removal of her IUD. *Id.* ¶ 29. Such circumstances demonstrate that Plaintiff did not "have the capacity to understand and use what a physician told her," which is "relevant to show that the physician failed to obtain [Plaintiff]'s informed consent." *Macy v. Blatchford*, 330 Or. 444, 454, 8 P.3d 204 (2000). For all relevant purposes, Plaintiff has thus sufficiently stated a battery claim.

**C. Plaintiff Stated a Medical Negligence Claim.**

To survive dismissal, a medical negligence claim must allege "(1) a duty that runs from the defendant to the plaintiff; (2) a breach of that duty; (3) a resulting harm to the plaintiff measurable in damages; and (4) causation, *i.e.,* a causal link between the breach of duty and the harm." *Zehr v. Haugen*, 318 Or. 647, 653–54, 871 P.2d 1006 (1994). Accordingly, each element was present here.

First, in disputing Plaintiff's medical negligence claim, Defendants omit that a "medical professional may operate under a standard of care that includes a specific duty to be aware of and guard against particular adverse psychological reactions or consequences to medical procedures. That is what plaintiff has alleged here," and what Defendants failed to provide. *Curtis v. MRI Imaging Servs. II*, 327 Or. 9, 14–15, 956 P.2d 960 (1998). Defendants did not give Plaintiff prior notice of the vaginal examination or anal cavity search, nor did Plaintiff anticipate her IUD to be removed. ECF No. 46 ¶ 26. While Plaintiff was told that she was being taken for a pap smear, Defendants instead invaded her body with vaginal clamps, forceps, and instruments.

*Id*. ¶ 31. As "medical professionals," Defendants "owed a duty to plaintiff to identify and guard against predictable psychological reactions or consequences." *Curtis*, 327 Or. at 16, 956 P.2d 960. They failed to fulfill this duty here, and in doing so, elevated the physical and psychological harms that Plaintiff experienced because of their negligence. This breach of duty was especially grave here because Plaintiff told Defendants she was suicidal, and they accordingly owed her a duty to appropriately respond to her mental health needs rather than intensify them. ECF No. 46 ¶¶ 22; 148. Under these circumstances, "the law will not insulate persons in that profession," namely, Defendants, "from liability if they fail in those duties, thereby causing the contemplated harm." *Curtis*, 327 Or. at 16, 956 P.2d 960.

Second, among conducting a medically unnecessary, invasive anal cavity search and vaginal examination, removing Plaintiff's IUD without informed consent, neglecting to offer Plaintiff an explanation or notice of the procedures, and not promptly providing Plaintiff with appropriate aftercare for her bleeding and cramping, Defendants repeatedly disregarded the "obligation of professional care that a physician owes to a patient." *Tomlinson v. Metro. Pediatrics, LLC*, 362 Or. 431, 444, 412 P.3d 133 (2018). It is evident that their conduct failed to meet "the level of care that a reasonably prudent, careful, and skillful practitioner of the physician's discipline would have provided to the patient under the same or similar circumstances." *Id*.; Or. Rev. Stat. § 677.095. Particularly, Plaintiff "reasonably may [have] expect[ed] to receive warnings about potential risks" of removing her IUD. *Id*. at 447, 412 P.3d 133. Yet Defendants did not provide such a warning, or for that matter, make *any* effort to inform Plaintiff of the alternatives or medical necessity of such a removal. "The law therefore imposes on a physician an obligation to meet that standard of care," which Defendants neglected. *Id*. at 444, 412 P.3d 133.

It is also of relevance that Plaintiff's IUD would not have been removed had Defendant Ronan not manipulated or pulled on it in a way that caused significant pain in the first place. ECF No. 46 ¶ 28. In doing so and acting inconsiderately to Plaintiff's pain, Defendant Ronan's conduct failed to meet "the level of care that a reasonably prudent, careful, and skillful practitioner of the physician's discipline would have provided to the patient under the same or similar circumstances." *Tomlinson*, 362 Or. at 444, 412 P.3d 133. Given that Defendants "failed to meet the standard of care in performing those services," they therefore "could be liable for medical negligence if [Defendants'] failure to meet the standard of care was a cause of harm to the patient," as here. *Martineau v. McKenzie-Willamette Med. Ctr.*, 371 Or. 247, 257, n.6, 533 P.3d 1, *adhered to on recons. as modified*, 371 Or. 408, 537 P.3d 542 (2023).

Third, as a direct result of Defendant's breach of duty, Plaintiff suffered both physical and psychological harm including fear, humiliation, anxiety, trauma, vaginal and anal bleeding, and intense pain. ECF No. 46 ¶ 62. These injuries further worsened because of Defendants' failure to promptly respond to Plaintiff's psychological and physical needs. *Id.* ¶ 37.

Fourth, had Defendants appropriately met the standard of care by promptly providing mental health care and aftercare, informing Plaintiff of the procedures and predictable outcomes, and seeking her informed consent prior to removing her IUD, Plaintiff's pain, bleeding, trauma, and emotional distress would certainly not be as severe. The alleged breaches plausibly caused or worsened her pain, bleeding, trauma, and emotional distress. Considering that Plaintiff only experienced these injuries following Defendants' actions, such circumstances establish "a causal link between the breach of duty and the harm." *Zehr*, 318 Or. at 654, 871 P.2d 1006.

In the presence of these four elements, Plaintiff has thus adequately stated a medical negligence claim as a matter of law.

**D. Plaintiff Stated a Negligence Claim.**

In order to state a negligence claim under Oregon law, a plaintiff must "establish that defendant's conduct 'unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff.'" *Scott v. Kesselring*, 370 Or. 1, 12, 513 P.3d 581 (2022) (quoting *Fazzolari By & Through Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 17, 734 P.2d 1326 (1987)). Such is precisely what unfolded here, as Defendants "unreasonably created a foreseeable risk" that Plaintiff's physical and psychological injuries would worsen as a result of their negligence. *Id*.

By failing to provide aftercare for Plaintiff's injuries, give her adequate clothing and bedding, or address her mental health needs, Defendants neglected the "harms that a reasonable factfinder, applying community standards, could consider within the range of foreseeable possibilities." *Fazzolari*, 303 Or. at 13, 734 P.2d 1326. Having been aware that Plaintiff was suicidal, had been approved for extra blankets, and requested outside medical care, Defendants "knew or should have known of an unreasonable risk of harm to the plaintiff" in failing to respond to her physical and psychological needs. *Chapman v. Mayfield*, 358 Or. 196, 214, 361 P.3d 566 (2015); ECF No. 46 ¶¶ 22, 68, 85. Specifically, Defendants should have reasonably foreseen that neglecting Plaintiff's suicidal ideation by placing her in a dry cell and not providing adequate psychological care would be detrimental to her mental health; keeping Plaintiff in a cold dry cell without adequate bedding or clothing would cause her severe pain and loss of circulation; and failing to promptly send Plaintiff for outside care or offer her a shower, clean clothing, or treatment for her pain and bleeding would worsen her symptoms. ECF No. 46 ¶ 148. Rather than appropriately acting upon these foreseeable risks, Defendants were negligent to Plaintiff's medical needs. "As a result of [their] negligence, defendant[s] caused plaintiff

physical injuries as well as severe emotional distress, including pain, anxiety," humiliation, and fear. *Scott*, 370 Or. at 4, 513 P.3d 581; ECF No. 46 ¶ 154.

All three Defendants additionally contend in their motions to dismiss that no allegations of negligence are specifically raised towards each respective Defendant. Yet Oregon case law emphasizes that "a person can create a risk of harm without being the sole or original source of the risk and that multiple actors can combine to cause harm." *Stone v. Witt*, 374 Or. 524, 552, 581 P.3d 919 (2025). Consequently, "the complaint states a common-law negligence claim for liability against defendants, because it alleges that it was reasonably foreseeable that defendants' conduct" would cause Plaintiff physical and psychological harm. *Id*. Thus, "[P]laintiff has pleaded facts sufficient to state a claim for ordinary negligence liability." *Id*. at 549, 581 P.3d 919.

**III. Plaintiff's claims are not barred by the statute of limitations.**

Defendants assert that Plaintiff's claims for relief are barred under Or. Rev. Stat. § 12.110 because service did not occur within the applicable statute of limitations. ECF No. 55 at. 5-7. Here, in addition to waiving their objections to service (as established prior), Defendants effectively waived any affirmative defense regarding a statute of limitations because they failed to raise this defense until now. "The Federal Rules of Civil Procedure require the defendant to plead affirmative defenses such as the statute of limitations in the answer," and Defendants' "failure to do so constitutes a waiver of that defense." *James v. United States*, 215 F.R.D. 590, 595 (E.D. Cal. 2002). Such is the case here. In Defendants' pleadings pertaining to the notice of discharge and injunction, which functioned as their first responsive pleadings, they repeatedly had opportunities to raise this defense yet did not. ECF Nos. 17, 36. "In general, a party waives any affirmative defense, such as a statute of limitations, not raised in its first

responsive pleading." *United States v. Colasanti*, 282 F. Supp. 3d 1213, 1216 (D. Or. 2017), *aff'd*, 787 F. App'x 973 (9th Cir. 2019); *see Day v. McDonough*, 547 U.S. 198, 199 (2006) ("a defendant forfeits a statute of limitations defense not asserted in its answer or in an amendment thereto."); *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005) ("a state waives its statute of limitations defense by filing a responsive pleading that fails to affirmatively set forth the defense"). Having failed to raise this affirmative defense in its prior pleadings, Defendants may not do so now. Granting dismissal on these grounds is therefore inappropriate.

As noted above, Defendants expressly imposed and requested a stay of these proceedings. Doing so waived the requirement to serve under Rule 4 or in any was good cause for failing to serve. The same circumstances defeat Defendants' argument under Or. Rev. Stat. § 12.020. Although ORS 12.020 ordinarily requires filing and service to commence a state-law action for limitations purposes, Or. Rev. Stat. § 12.210 provides that, when commencement is stayed by an injunction or statutory prohibition, the period of the stay "shall not be a part of the time limited for the commencement of the action." The Oregon Court of Appeals has held that the "time limited for commencement" includes ORS 12.020's 60-day service period. *Mitchell v. Harris*, 123 Or. App. 424, 429–30, 859 P.2d 1196 (1993). Accordingly, the period during which the asserted bankruptcy stay and the Court's orders prohibited continuation of the action cannot be counted against Plaintiff's time to complete service.

Defendants' contrary interpretation would produce an untenable result: the law would prohibit Plaintiff from employing process while simultaneously allowing the time for employing process to expire. Oregon courts reject interpretations under which a stayed act becomes impossible through the passage of time during the stay. *See Pine Ridge Park v. Fugere*, 252 Or. App. 456, 463–64, 287 P.3d 1268 (2012) (holding that a 60-day enforcement period was

correspondingly tolled while enforcement was stayed and observing that the contrary result "would make no sense whatsoever").

Alternatively, if Defendants now contend that their prior representation was legally incorrect and that the bankruptcy stay did not prohibit service against them, they are estopped from obtaining a limitations dismissal based on Plaintiff's reliance on that representation. Oregon applies equitable estoppel where the defendant engaged in affirmative conduct that induced the plaintiff to delay commencement; technical fraud, bad faith, and intent to deceive are unnecessary. *Lyden v. Goldberg*, 260 Or. 301, 304–05, 490 P.2d 181 (1971). Defendants expressly represented that process was stayed, obtained court relief on that basis, and participated in litigating the asserted bankruptcy protection without raising service. Plaintiff relied on that position by refraining from issuing process while the action was stayed. Defendants may not now use the resulting delay to extinguish the claims.

The same conduct supports judicial estoppel. Defendants' present position—that Plaintiff's claims should be dismissed because she did not serve them—is inconsistent with their earlier position that Plaintiff was prohibited from continuing the action and employing process against them. The Court acted upon the earlier position by vacating deadlines and staying proceedings. Accepting Defendants' present position would give them an unfair advantage by converting the stay they invoked into a permanent limitations defense. *See New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001).

Defendants cannot prevail under either characterization of the stay. If the stay applied, Rule 4(m) and ORS 12.210 suspend or extend the service period. If it did not apply, Defendants' affirmative representations and litigation conduct estop them from relying on the resulting delay. In either event, dismissal is unwarranted.

Finally, even if the Court concluded that the state-law claims were not timely commenced under ORS 12.020, dismissal with prejudice would be improper. Or. Rev. Stat. § 12.220 expressly permits refiling where an action was timely filed but dismissed because service was not completed under ORS 12.020, provided the defendant received actual notice within 60 days. Counsel appeared for Defendants Cade, Ronan, and Foto only 24 days after the complaint was filed and immediately sought relief concerning the claims against them. Defendants therefore had actual notice within the statutory period, and ORS 12.220 independently prevents the alleged service defect from permanently extinguishing Plaintiff's claims.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss should be denied.

DATED: July 31, 2026

**POST BURGESS**

*/s/ John Burgess*
Carl Post, OSB No. 061058
carlpost@civilrightsoregon.com
John Burgess, OSB No. 106498
johnburgess@civilrightsoregon.com
Tel: (971) 442-9303
Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE

Plaintiff certifies that the foregoing brief complies with the word limit of LR 7-2(b). This brief excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel, contains 10,598 words.

DATED: July 31, 2026

**POST BURGESS**

*/s/ John Burgess*

Carl Post, OSB No. 061058
carlpost@civilrightsoregon.com
John Burgess, OSB No. 106498
johnburgess@civilrightsoregon.com
Tel: (971) 442-9303
Attorneys for Plaintiff